MARJORIE ANNE GOFF and DEAN JOE GOFF, by HENRIETTA GOFF, Their Next Friend, Appellants, v. SILAS C. GOFF, Executor of CHARLES GRANVILLE GOFF, Deceased, et al.—No. 38742.—179 S. W. (2d) 707.

Division Two, March 6, 1944.

Rehearing and Motion to Transfer to Banc Denied, May 2, 1944.

*Du Bois & Miller, W. J. Beavers* and *Walter A. Raymond* for appellants.

*Culver, Phillip, Kaufmann & Smith* for, respondents.

BARRETT, C.—This is a suit for an accounting of rents and profits, for an injunction and to try and determine title to a tract of land in Worth County. The defendants are the legatees and devisees and the executor of the estate of Charles Granville Goff who died on September 7, 1942. The plaintiffs, Marjorie Anne Goff, age twelve, and Dean Joe Goff, age ten, are the children of Joe Goff who died on December 31, 1936. The plaintiffs assert title to the land as the grandchildren and pretermitted heirs of Charles Granville Goff, neither they nor their father, Joe Goff, being named or provided for in this will. Mo. R. S. A., Sec. 526.

Charles Granville Goff was a farmer and spent most of his life in Worth County. About five months before his death, at the age of about sixty-six years, he went to California and stayed with a nephew, Roy S. Goff. While there and about five weeks before he died he executed his will. His will appointed his brother, Silas C. Goff, executor and provided that his executor should sell all of his property "in a manner which may seem best to him and in his discretion" and that he should distribute the proceeds as follows: $5.00 to his brother George L. Goff; $1,000.00 to his brother Silas, the executor, and the remainder between his nephews, Roy S. Goff and L. Jay Goff, equally. The second clause of the will said: "I am not married and have no children." The fifth clause said: "I hereby give and bequeath to any person who might contest this will the sum of $1.00 only, in lieu of any other share or interest in my estate, either under this will or through intestate succession."

The trial court found that Charles Granville Goff was not aware of the existence of the plaintiffs, Marjorie Anne and Dean Joe, but found that he had provided for them by item five of the will and, therefore, they were not pretermitted heirs. The respondents contend that item five shows the testator's intention but if it does not do so

clearly the extrinsic evidence, including the testator's declarations, makes definitely certain his intention that these plaintiffs were in his mind and provided for by this clause of his will. The plaintiffs contend that the language of the will is plain and unambiguous and, therefore, the court was in error in admitting extrinsic evidence to show the testator's intention to be other than that expressed in his will. The plaintiffs contend, in any event, that the court erred in holding that the plaintiffs, grandchildren unknown to the testator, were named or provided for by item five of the will.

The facts with reference to those who are specifically named in the will are that the testator, Charles Granville Goff, was survived by two brothers, Silas and George. One brother, Edward, predeceased the testator and his son, Roy, is one of the residuary beneficiaries. The other residuary beneficiary is Silas' son, L. Jay Goff. Silas was appointed executor of the will and given a bequest of $1,000.00. Before Granville went to California he and his brother George quarreled over a tenant George had secured for Granville's farm. Granville experienced some difficulty in getting the tenant off the farm and the controversy between the brothers became so bitter that Granville said to Silas: "I will sure fix it so George . . . will not participate in my property." He told Silas' daughter, Mrs. Akard, that he "didn't want Uncle George to have anything he had." And so, in his will, he gave his brother George five dollars. Having made the son of his deceased brother, Edward, one of his residuary beneficiaries ▇▇▇▇ and having given Silas $1,000.00 and George five dollars, the testator specifically named or provided for every blood relative, as far as this record is concerned, except Joe or these plaintiffs.

The facts with reference to the testator, Joe and Joe's mother and their relationship to one another furnish the background for this litigation and the circumstances which the respondents claim exclude the plaintiffs as pretermitted heirs under this will. In the 1890's the testator, Granville, was a young man living on his father's farm in Worth County. David White and his family were farm neighbors, living a few miles distant. On October 10, 1895 Granville Goff and Cassie M. White procured a marriage license in Worth County and were married in the White home by a minister, Joshua Florea. They immediately went to Granville's home to live with his people. After four or five weeks Cassie left the Goff home or Granville took her back to her home and she instituted an action against him for divorce in the Circuit Court of Worth County. When Cassie and Granville were married Cassie was pregnant and on February 22, 1896, a son, Joe, was born. In her divorce action she was awarded a divorce and custody of the minor child of whom she alleged she was enceinte by Granville at the time of their marriage. Cassie and her child remained on her father's farm, in the vicinity of the Goff's home, eight or ten

years. In 1901 Cassie married J. W. McCann, with whom she lived until his death in 1932. At the time of the trial she was living in Wisconsin with her daughters and sons.

Joe Goff was reared in the McCann home. He was married on June 21, 1929 and the plaintiffs are his children. Prior to his death in 1936 he had been cashier of the Swea City and Hawkeye banks in Iowa and at the time of his death was an assistant state bank examiner.

Silas Goff testified that Granville and Cassie were married at the request of Cassie and her father. Silas called it a "shotgun" wedding. He testified that after Granville and Cassie came to their home to live they quarreled continuously. He says that they quarreled violently over whether Granville was the father of the unborn baby—Cassie contending that he was its father and Granville denying it. Silas testified that throughout his life Granville denied Joe's paternity. A neighbor, as well as Silas and Silas' daughter, Mrs. Akard, all testified that Granville was always most reluctant to discuss Joe and the marriage to Cassie. According to this record he mentioned them but two or three times in the forty-seven years and Ezekiel Goff, a cousin of Granville's, said that when Granville was notified of Joe's death in 1936 he said: "I am not interested." We mention and call attention to the evidence reviewed in this paragraph because it furnishes a background for the plaintiffs' contention, as the court found, that Granville Goff was not even aware of Joe's children and, therefore, could not have had them in mind and did not provide for or mention them in item five, and the defendants' contrasting contention that the testator did know of the children, had them in mind and provided for them in item five.

Silas testified that just prior to the time Granville went to California Granville was telling him about his difficulties with George and the tenant. In that conversation Granville stated that he intended to fix his business before he went to California and he said: "I will sure fix it so George and Joe's children will not participate in my property." Silas says Granville referred to Joe's children three or four times in the course of five or six years. Mrs. Akard, Silas' daughter, said that she once asked Granville whether he had ever been married and he told her he had but he denied Joe's paternity and "he told me he had these two grandchildren. I have never repeated that. He didn't want it repeated." Subsequently he told her about the quarrel with his brother George and said: "I am going to take care of those who would take care of me. I don't know of anyone but you and Jay and Roy." Then Mrs. Akard testified "he said he was going to take care of the ones that would take care of him and he very definitely said he didn't want Uncle George to have anything he had and he didn't want Joe's children to have anything because Joe was not his boy."

Joe's wife, the mother of the plaintiffs, said: "To my knowledge, I don't think he (Granville) knew there were children." There was other evidence from the plaintiffs indicating that Granville did not know of Joe's two children. But, as we have said, the respondents contend that item five was designed to and did mention and provide for these children regardless of whether the testator knew of their existence or not.

Deferring to and accepting, as we do in this instance, the trial court's finding and judgment (based for the most part on the credibility, weight and probative force of the evidence) that Marjorie Anne Goff and Dean Joe Goff are the grandchildren of the testator and the children of his deceased son Joe and that "Charles Granville Goff did not know of the existence of the plaintiffs" we eliminate all questions as to the admissibility of the extrinsic evidence, as to which there may be some doubt. See and compare the annotations in 94 A. L. R. 26, 209-211; 51 L. R. A. (N. S.) 646; 1 Page, Wills, Sec. 530; Thomas v. Black, 113 Mo. 66, 20 S. W. 657; McCoy v. Bradbury, 290 Mo. 650, 235 S. W. 1047 and Bond v. Riley, 317 Mo. 594, 296 S. W. 401; Willard v. Darrah, 168 Mo. 660, 68 S. W. 1023. But with this assumption of fact as a starting point the conclusion that they were not provided for by item five of this will within the meaning of Section 526 is inescapable.

In item five of this will Marjorie Anne's and Dean Joe's father, Joe Goff, (who to the testator's knowledge predeceased him) is neither "named" nor "provided for" specifically and hence the children are not excluded by reason of their father's being named or provided for, which would clearly and on the face of the will show that the testator remembered his child and intentionally disinherited his descendants whether he knew of their existence or not, as was the fact in Lawnick v. Schultz, 325 Mo. 294, 28 S. W. (2d) 658 and Miller v. Aven, 327 Mo. 20, 34 S. W. (2d) 116. The word "child" or "grandchildren" does not appear in item five and so they were not all remembered collectively and excluded as a class or provided for as a class as was the case with McCourtney v. Mathes, 47 Mo. 533 and Ernshaw v. Smith (Mo.), 2 S. W. (2d) 803.

The respondents say that item five is an exclusion clause and is sufficient to exclude the plaintiffs because "through intestate succession" could only mean an heir. In this respect the instance is comparable to Williamson v. Roberts (Mo.), 187 S. W. 19. There the testator had five children, one of whom was an unmarried, epileptic daughter. He was particularly anxious to provide for her and devised his land to her without mentioning the other children. In a separate item of his will he said: "I desire that all the rest and residue and remainder of my estate be disposed of as the law directs" and it was urged that this language was a sufficient compliance with the statute but the court could not find from this language that the testator had

the other children in mind. As was said in Pounds v. Dale, 48 Mo. 270, 272: "He had nine children, and defendant urges that it is unreasonable to suppose that he forgot the seven while naming the two. I certainly would conjecture that all were in his mind, and that he meant to disinherit them. But it is a mere guess. The will must show upon its face that he remembered them; and though they be not directly named, there must be provisions or language that point directly to them." See also Baker v. Grossglauser (Mo.), 250 S. W. 377, 378 and Wyatt v. Stillman Institute, 303 Mo. 94, 103, 260 S. W. 73.

The respondents, relying on the fact that Granville always denied Joe's paternity and the testimony of Silas and his daughter, Mrs. Akard, that Granville said he did not want Joe's children to have anything or that he would fix it so they would not get anything, contend that the testator intended to disinherit the plaintiffs and that the testator's declarations clearly identify the persons to whom he intended the exclusionary clause to apply. Our acceptance of the trial court's finding that Granville was not even aware of the plaintiffs is decisive of that contention as far as these two children are concerned, it seems to us. But, even if the argument might be made as to Joe we do not think it applicable under our statute. It is true that there are two cases in Missouri which say that the statute applies only when the children or descendants were "unintentionally omitted." But the complete quotation from one of them shows what the court meant when it said, ". . . the object of it is to produce an intestacy only when the child, or the descendant of such child, is *unknown or forgotten, and thus unintentionally omitted.*" McCourtney v. Mathes, 47 Mo. 533. And, as we have previously pointed out with reference to the Lawnick case, in both instances the testator used the word "children" and so his heirs or descendants were not unintentionally omitted.

The soundness of the reasons for, the policy of and the practical operation of the statutes with reference to pretermitted heirs are not now open to question. It is sufficient to say that such statutes are a limitation upon and modify one's unlimited and unqualified power and right to disinherit and to dispose of one's property. The policy behind the statutes "Fundamentally, (it) is a desire to prevent inadvertent disinheritance." 29 Col. L. R., 748, 750. To accomplish the purpose of preventing inadvertent disinheritance, from which there was no relief at common law, two types of statutes have been enacted. One is called the Massachusetts type statute and the other is commonly called the Missouri type statute. 32 Ill. L. R. 1. The Massachusetts type statutes provide that if the testator omits to provide for any of his children or the issue of a deceased child such omitted child or issue shall take as though the testator had died intestate "*unless it appears that the omission was intentional, and*

*not occasioned by accident or mistake."* The Missouri type statutes provide that if a person make his last will and die leaving a child or descendants of a child *"not named or provided for in such will, . . . every such testator . . . shall be deemed to die intestate"* as to the omitted child or descendants. Mo. R. S. A., Sec. 526. The Massachusetts type statutes emphasize *intention* and "intention is the material factor in determining its applicability." Annotation 65 A. L. R. 472, 473. It is for this reason that many of the respondents' cited cases are inapplicable; they are taken from California where a Massachusetts type statute has been enacted and "The section requires that the omission appear from the will to be intentional," there is "no requirement . . . either that a child be named in the will or that he be provided for therein." Estate of Lombard, 16 Cal. App. (2d) 526, 60 Pac. (2d) 1000; Estate of Allmaras, 24 Cal. App. (2d) 457, 75 Pac. (2d) 557; Estate of Kurtz, 190 Cal. 146, 210 Pac. 959. On the other hand, the Missouri type statutes omit all reference to intention and the statutes, by their terms, arbitrarily apply unless the child or descendant is named or provided for. Annotation 65 A. L. R. 472, 481; 1 Page, Wills, Secs. 526, 528; 16 Am. Jur., Secs. 82, 85. Under these statutes it is immaterial that the testator intended to disinherit a child or descendants of a deceased child unless there is some language or provision in his will indicative of his purpose. Annotation 94 A. L. R. 26, 211; 51 L. R. A. (N. S.) 646; 1 Page, Wills, Sec. 530; Thomas v. Black, 113 Mo. 66, 20 S. W. 657. Joe, having predeceased Granville, could not have been intended or included in the phrase "or through intestate succession" and, as we have said, the court found that Granville did not know of Joe's children. Furthermore, the first clause of the will says, "I am not married and have no children," and so, obviously, he could not have had children or their descendants in mind. Even if he knew of these plaintiffs he must have regarded their status as foreclosed by Cassie's divorce or Joe's death, of which he had been informed in 1936. Wadsworth v. Brigham, 125 Ore. 428, 259 Pac. 299; In re Parrott's Estate, 45 Nev. 318, 203 Pac. 258.

Finally, it is argued that the phrase "I hereby give and bequeath to any person *who might contest this will* the sum of $1.00 only," shows that the testator "meant to exclude someone." And the respondents argue that the will shows that "someone" meant any person not provided for in the will and included these plaintiffs or anyone who would share in his estate by intestate succession. The respondents emphasize the word "contest" and urge that the word was used in a generic sense and not in the restricted sense of a statutory will contest. But there is nothing in this record nor in the context in which the word is used to indicate that it was used with reference to the plaintiffs or anyone else occupying their relationship to the testator and the will. A pretermitted child, under the statute,

takes independently of the will and has no remedy by way of attacking the will itself or its probate. Schneider v. Koester, 54 Mo. 500; Cox v. Cox, 101 Mo. 168, 13 S. W. 1055; Story v. Story, 188 Mo. 110, 86 S. W. 225; Campbell v. St. Louis Union Trust Co., 346 Mo. 200, 139 S. W. (2d) 935; Annotation 123 A. L. R. 1073, 1084. It may be that in some uses of the word the plaintiffs "contest" the will but nevertheless the will, though it does not name pretermitted heirs, is valid in all other respects (Gibson v. Johnson, 331 Mo. 1198, 56 S. W. (2d) 783) and in the absence of other circumstances with reference to the clause other than the testator's general intent, not expressed in his will, it cannot be assumed that the word was used in the sense of applying to these plaintiffs.

It is our view, under the assumed facts, that neither the testator's child, Joe, nor Joe's descendants, Marjorie Anne and Dean Joe, were "named or provided for in" his will and he is "deemed" to have died intestate as to them. Thomas v. Black, supra; Williamson v. Roberts, supra; ▆▆ Barker v. Hayes, 347 Mo. 265, 147 S. W. (2d) 429.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.