649 P.2d 488

In the Matter of the ESTATE OF Joseph L. HILTON, Deceased.

Ara Hilton, Personal Representative-Appellee,

Elmer Darrell Hilton and Phyllis Hilton Elkins, Petitioners-Appellants,

Loretta Szaloy, Ara Carden and Laura Griffin, Respondents-Appellees.

No. 5454.

Court of Appeals of New Mexico.

June 15, 1982.

Certiorari Denied Aug. 6, 1982.

.

Jack T. Whorton, Alamogordo, for appellants.

Eugene E. Brockman, Brockman & Cihak, Tucumcari, for appellees.

Ricky D. Purcell, Rowly, Bowen & Purcell, P. A.; Tucumcari, for defaulting appellees.

## OPINION

DONNELLY, Judge.

Appellants, as grandchildren of Joseph L. Hilton, deceased, (testator), appeal from an order of the district court denying their claim for an intestate share of testator's estate. Appellants assert that the court erred as a matter of law (1) in finding that testator intended to disinherit appellants, upon evidence admitted solely for a limited purpose; and (2) in denying appellants an intestate share of testator's separate estate under the pretermitted children section of the New Mexico Probate Code, § 45–2–302, N.M.S.A.1978.

We affirm.

Testator died on August 2, 1980, at age 92, leaving a Last Will and Testament, dated August 30, 1972. The adversary parties herein are appellants, Phyllis Hilton Elkins and Elmer Darrell Hilton, who were not mentioned by name in testator's will; appellees, Ara Hilton, testator's surviving widow, and testator's surviving three daughters: Loretta Szaloy, Ara Carden, and Laura Griffin.

Testator was married twice. He had four children by his first marriage: the three daughters, who are appellees herein, and one son, Elmer Hilton. Testator's son predeceased him and died in August, 1965, prior to the execution of testator's will. Testator's deceased son had two children who survived him (testator's grandchildren), Phyllis Elkins and Elmer Darrell Hilton, who are the appellants herein.

Testator was divorced from his first wife and subsequently married Ara Hilton. Testator had no children from his second marriage.

Testator's will was admitted to probate in the Quay County District Court on September 24, 1980. After making provision for testator's debts and funeral expenses, the will provided in applicable part as follows:

## II.

I give, devise and bequeath my home place consisting of 1486.42 acres in Quay County, New Mexico, ..., and also the Williams, Gregory and Spann lands owned by me in Jack County, Texas, near Jacksboro, Texas, to my beloved wife, ARA HILTON, for the term of her natural life, subject only to the provisions of paragraph IV, herein, and at her death to my three daughters, Loretta Szaloy, Ara Carden and Laura Griffin, or children surviving them, if they or any of them should predecease my wife, Ara Hilton, share and share alike. If any one or more of said daughters should predecease Ara Hilton and leave no children, then said land shall go to my surviving daughters or children surviving them.

## III.

I give and bequeath to my beloved wife, Ara Hilton, and to my three daughters, Loretta Szaloy, Ara Carden and Laura Griffin, all monies which I may have at the time of my death, share and share alike. If my beloved wife should predecease me, the bequest to her hereunder shall lapse, and said monies shall be divided equally among my said daughters. In the event any one or more of my daughters should predecease me, their share shall go to their surviving children. If any one or more of my daughters should predecease me and leave no children, it is my will that their share shall be distributed equally to the surviving legatees hereunder.

. . . .

## V.

I give, devise and bequeath all of the remainder of my estate whether consisting of real, personal or mixed property

and wherever found or situated to my three daughters, share and share alike. If any one or more of them should predecease me, then it is my will that the share of said deceased shall go to their surviving children. If any one of them should predecease me, leaving no children, it is my will that my entire residuary estate shall go to the surviving residuary devisees hereunder.

. . . .

## VII.

I declare that I have only three children, namely: Loretta Szaloy, Ara Carden and Laura Griffin, my daughters, and that if any other person claims to be a child or heir of mine and establishes such claim in a Court of competent jurisdiction, I give to such person the sum of One Dollar.

Paragraph IV provided a specific bequest to testator's wife's grandson, Larry Williams in appreciation for his help in testator's farming operations. Paragraph VI named testator's wife executrix of the will and designated his oldest daughter, Loretta Szaloy, as alternate executrix in the event of his wife's inability to serve. The will was properly subscribed and witnessed.

At the conclusion of the hearing on appellants' petition for an intestate share of decedent's estate as omitted heirs under the last will and testament, the trial court denied appellants' claims. The court entered the following pertinent findings of fact:

5. By his Will, Joseph L. Hilton left the residue of his estate to Loretta Szaloy, Ara Carden and Laura Griffin. The Will did not mention . . . Elmer Darrell Hilton or Phyllis Elkins by name. . . .

. . . .

7. The decedent did not otherwise provide for Elmer Hilton, his deceased son, during Elmer's lifetime; nor did the decedent otherwise provide for the petitioning grandchildren during his lifetime.

8. Throughout their lifetime, both before and after the execution of the will involved herein, Elmer Darrell Hilton and Phyllis Elkins had periodic contacts, both in person and by letter, with their grandfather, Joseph L. Hilton. Mr. Hilton was, therefore, aware of their existence at the time of executing his will and thereafter.

9. During the lifetime of Joseph L. Hilton, there was never any mention nor any hint of any person claiming to be a child of Joseph L. Hilton other than Loretta Szaloy, Ara Carden, Laura Griffin and Elmer Hilton who were children of his first marriage.

10. Joseph L. Hilton intended to refer to Elmer Darel [sic] Hilton and Phyllis Elkins when he included the provision in his will that stated, 'if any other person claims to be a child or heir of mine and establishes such claim in a court of competent jurisdiction, I give to such person the sum of One Dollar.'

Appellants have challenged the court's findings no.'s 8, 9 and 10.

### 1) *Admission of Extrinsic Evidence*

Appellants argue that the trial court's decision and findings of fact no.'s 8, 9 and 10, determining that the testator intentionally excluded appellants from his will, were improperly predicated upon extrinsic evidence admitted solely for a different, limited purpose, contrary to the court's ruling announced on a motion *in limine.*

Prior to the hearing on the merits, the trial court heard appellants' motion *in limine* to restrict the evidence at trial regarding testator's intent to disinherit the children of his deceased son. The trial court ruled that under Probate Code § 45–2–302(A)(1), *supra*, the court must determine from the language of the will itself that the failure to provide for appellants was intentional. The court, however, held that *extrinsic evidence of matters outside the will was admissible under § 45–2–302(A)(3), supra*, as bearing upon appellees' contention that testator had provided for appellants by transfer of property outside the will and intended that the transfer be in lieu of testamentary disposition.

Under § 45–2–302(A), *supra*, if a testator omits a child from a will, the child or his

issue is disinherited only when: (1) the omission appears to be intentional clearly from the face of the will, (2) the testator at the time of execution of the will had one or more children and devised substantially all of his estate to the testator's spouse; or (3) testator provided for the omitted child by transfers outside his estate with the intent that such transfers be in lieu of testamentary disposition. If the testator's intent does not appear from the language of the will itself or cannot be established by one of the other criteria above, the law presumes that the failure to mention the child in the will was unintentional.

Although under § 45–2–302(A)(1), *supra*, extrinsic evidence is not admissible to overcome the presumption against disinheritance and the intention to disinherit must appear in the language of the will itself, extrinsic evidence is admissible under the statute to attempt to prove the testator's intent to disinherit under the situations contemplated by § 45–2–302(A), subsections (2), and (3), *supra.*

The trial court did not find from the evidence presented that the testator provided for appellants outside the will in lieu of any testamentary disposition. As shown by the court's findings, the trial court did, however, consider extrinsic evidence as to the surrounding circumstances known to the testator at the time of the execution of his will. *Matter of Estate of Shadden*, 93 N.M. 274, 599 P.2d 1071 (Ct.App.), *cert. denied*, 93 N.M. 172, 598 P.2d 215 (1979).

Appellants have challenged findings 8, 9 & 10, but have *not* challenged the court's finding no. 7, which found from extrinsic evidence presented that decedent's only son, Elmer Hilton, was predeceased, and that decedent did not otherwise provide for his grandchildren (appellants) during his lifetime. The trial court could properly receive extrinsic evidence to show the testator's awareness of appellants' existence at the time he executed his will—since this went to the issue of whether he had otherwise provided for them during his lifetime. The court's finding no. 8, challenged by appellants, is directly related to the court's find-

ing no. 7, not challenged and is consistent with the court's ruling admitting the evidence for a limited purpose. The court's finding no. 9 is immaterial to the ultimate issues determined by the court, i.e., whether the testator intended to disinherit his grandchildren.

The trial court's finding no. 10, challenged by appellants, was susceptible of being supported from evidence derived from the will itself, particularly paragraph VII, in accordance with § 45–2–302(A)(1), *supra*, (contrary to contention that it was predicated on improper extrinsic evidence). The naming of appellants in the court's finding no. 10 was not error.

■ The court's finding no. 10 was in actuality a conclusionary finding, i.e., a mixed finding of ultimate fact and conclusion of law, determining the testator's intent from the wording of paragraph VII of testator's will. Ultimate facts and conclusions of law are often indistinguishable, and their intermixture in the court's decision as written does not create reversible error where a fair construction of them justifies the court's judgment. *Gough v. Famariss Oil & Refining Co.*, 83 N.M. 710, 496 P.2d 1106 (Ct.App.), *cert. denied*, 83 N.M. 698, 496 P.2d 1094 (1972); *see Goodwin v. Travis*, 58 N.M. 465, 272 P.2d 672 (1954); *Clark v. Duval Corp.*, 82 N.M. 720, 487 P.2d 148 (Ct.App.1971).

■ Allegedly erroneous findings of fact that are immaterial to a decision in a case do not require reversal if remaining findings support a proper conclusion of law and judgment. *Mathieson v. Hubler*, 92 N.M. 381, 588 P.2d 1056 (Ct.App.), *cert. denied*, 92 N.M. 353, 588 P.2d 554 (1978); *Tome Land and Improvement Co., Inc. (NSL) v. Silva*, 86 N.M. 87, 519 P.2d 1024 (1973). Moreover, under the facts of this case appellants' contentions as to the effect of the court's ruling on the motion *in limine* are inapposite, since the trial below was a non-jury trial. *See Proper v. Mowry*, 90 N.M. 710, 568 P.2d 236 (Ct.App.1977); J. Blumenkopf, *The Motion In Limine*, 16 New England L.J. 171 (1981).

■ The court's finding no. 10 was drawn from documentary evidence. Where all or substantially all of the evidence is documentary, an appellate court may independently examine and weigh it, although giving some weight to the trial court's finding. *United Nuclear Corp. v. General Atomic Co.*, 93 N.M. 105, 597 P.2d 290 (1979), *cert. denied*, 444 U.S. 911, 100 S.Ct. 222, 62 L.Ed.2d 145 (1979); *First National Bank of Albuquerque v. Energy Equities, Inc.*, 91 N.M. 11, 569 P.2d 421 (Ct.App.1977).

■ Since we next determine that paragraph VII of testator's will, effectively amounted to a declaration by testator of an intention to disinherit "any child or heir" not expressly provided for under the will, the trial court's findings are not based upon any improper evidence.

### 2) *Claim as Pretermitted Heirs*

Under their second point, appellants argue that the provisions of § 45–2–302(A), *supra*, providing for pretermitted children supports their claim to a portion of their grandfather's estate. This section provides in pertinent part:

A. If a testator fails *to [name or]* provide in his will for any of his children born or adopted *[before or]* after the execution of his will, the omitted child *[or his issue]* receives a share in the estate equal in value to that which he would have received if the testator had died intestate unless:

(1) *it appears from the will that the omission was intentional*;

(2) when the will was executed, the testator had one or more children and devised substantially all his estate to the other parent of the omitted child; or

(3) *the testator provided for the child by transfer outside the will and the intent that the transfer in lieu of a testamentary provision is shown by statements of the testator or from the amount of the transfer or other evidence.*

B. If at the time of the execution of the will the testator fails to provide in his will for a living child solely because he believes the child to be dead, the child receives a share in the estate equal in value to that which he would have received if the testator had died intestate. [Emphasis supplied.]

The statute was adopted from the Uniform Probate Code, § 2–302 Pretermitted Children (UPC), by the state legislature with several additions contained in brackets as quoted above.[1]

Testator made and executed his will prior to the enactment and effective date of the New Mexico Probate Code. Nevertheless, the Probate Code controls the interpretation and construction of testator's will even though the document was executed prior to the code's adoption.[2] *See Matter of Estate of Seymour*, 93 N.M. 328, 600 P.2d 274 (1979).

Prior to the adoption of the code in New Mexico and at the time of the execution of decedent's will, § 30–1–7, N.M.S.A.1953, dealt with pretermitted children. This statute was copied from the statute in force in Missouri in 1901. *Matter of Will of Padilla*, 91 N.M. 160, 571 P.2d 817 (1977); *In re Gossett's Estate*, 46 N.M. 344, 129 P.2d 56 (1942). As stated in *Padilla, supra*, the provisions of former § 30–1–7, *supra*, were "adopted in response to the common law rule that an omission of a child from a will was presumed to be a deliberate omission. It was designed to change the common law rule and to provide that the omission of a child would be presumed to be unintentional."

In *Padilla, supra*, the court held that under § 30–1–17, *supra*, (the statute adopted from Missouri) the question whether a child was intentionally omitted from a testator's

---

1. Laws 1975, ch. 257, § 2–302, *as amended*, Laws 1977, ch. 121, § 6. As defined in Black's Law Dictionary 1069 (5th ed. 1979), the term "pretermit" means to omit or to disregard, e.g. failure of testator to mention his children in his will.

2. Laws 1975, ch. 257, § 10–101, *as amended*, Laws 1977, ch. 121, § 11, makes the Probate Code effective July 1, 1976, as to the affairs of decedent's dying on or after the effective date of the Code.

will could be answered only by reference to the will itself, and not through recourse to extrinsic evidence.

As noted in T. Atkinson, Law of Wills, ch. 3, § 36, at 142 (2d ed. 1953): "Under the Missouri type of statute parol evidence is not admissible to show that the testator had not forgotten his omitted child—the question is simply whether the child was named or provided for in the will, and if not he takes his intestate share under the statute." A different rule evolved in states which adopted the Massachusetts-type statute. The Massachusetts type statute provides that a child omitted from a testator's will may take his intestate share "unless it appears that the omission was intentional and not occasioned by accident or mistake." T. Atkinson *supra* at 141. Atkinson further states that, under the Massachusetts rule, "where the statute provides that the child takes unless it appears that the omission was intentional, parol evidence is usually admissible to show that intent." Id. at 143; *see also Estate of Torregano*, 54 Cal.2d 234, 352 P.2d 505, 5 Cal.Rptr. 137, 88 A.L.R.2d 597 (1960); *see also* Annot., 88 A.L.R.2d 616; Annot., 152 A.L.R. 724; *Goff v. Goff*, 352 Mo. 809, 179 S.W.2d 707, 152 A.L.R. 717 (1944).

Both the Missouri and Massachusetts type statutes are based upon the theory that if a testator failed to name or mention a child, he overlooked or forgot to provide for the child, and presumptively the parent did not wish to disinherit his children. T. Atkinson, *supra*, at 141; *see Mares v. Martinez*, 54 N.M. 1, 212 P.2d 772 (1949); *Sanchez v. Quintana*, 97 N.M. 508, 641 P.2d 539 (Ct. App.1982).

The framers of the Uniform Probate Code in drafting § 2–302 adhered to the presumption that a testator who omitted or failed to mention in his will a child born after the will was executed did not wish to disinherit such a child, but materially departed from the provisions of the Missouri type statute by expressly providing that under certain situations set out in the statute, the presumption against disinheritance could be rebutted, and permitting the testator's intention to be shown by extrinsic evidence under the situations arising under § 45–2–302, subsections (A)(2) and (3) and (B), *supra.* As noted in comment, *The Uniform Probate Code in Utah*, B.Y.U.Rev. 425, 434: "The UPC provision [§ 2–302] is based on the presumption that if the testator failed to mention a child born or adopted *prior* to the execution of the will, he intended to disinherit him."

Notably, although both New Mexico and Utah adopted the UPC, both amended § 2–302 relating to pretermitted children and chose to add to this section additional language expanding the presumption against disinheritance to cover children born both *before* as well as *after* the date the testator executed his will. Because of the insertion of additional language in § 45–2–302(A), *supra*, New Mexico's version of this section of the UPC is a hybrid.

This difference in wording between § 2–302 of the UPC and § 45–2–302(A), *supra* negates the presumption that if a child or the child's issue *born before* execution of a will are not mentioned in the will of a testator, it is presumed that the testator intended to disinherit them. As stated in comment, *The Uniform Probate Code in Utah, supra*, at 433:

> The UPC [§ 2–302] provides that the section applies only to children born or adopted *after* the execution of the will; the UUPC [Uniform Utah Probate Code], however, contains no such restriction. The UUPC, then, requires the testator to satisfy one of the . . . requirements [stated in § 2–302] in order to disinherit *even* children born or adopted *before* the execution of the will.[3] [Emphasis added.]

**3.** The similar changes made by the Utah Legislature in adopting the Uniform Probate Code provision as to pretermitted heirs is discussed in *Utah Legislature Survey*, 1977 Utah L.Rev. 521, 585, noting: "The Utah UPC section which provides an intestate share for unintentionally omitted children or issue of deceased children, is a hybrid of the corresponding UPC provision and former Utah law. Whereas the UPC includes only children of the testator who are 'born or adopted after the execution of his will' or who are omitted from the will 'solely be-

*See also In re Halle's Estate*, 29 Wash.2d 624, 188 P.2d 684 (1948); *Matter of Estate of Hastings'*, 88 Wash.2d 788, 567 P.2d 200 (1977).

In light of the peculiar language of the New Mexico statute relating to pretermitted children, we must therefore look to the will of decedent to determine if the document itself indicates any intention on the part of the testator to disinherit appellants as the heirs of his deceased son under § 45–2–302(A)(1).

In T. Atkinson, *supra*, at 143, the rule is stated that "grandchildren are usually within the express provisions of the [pretermitted heir] statute if their parent is predeceased . . . ." *See also In re Fell's Estate*, 70 Idaho 399, 219 P.2d 941 (1950); *Goff v. Goff, supra; In re Benolken's Estate*, 122 Mont. 425, 205 P.2d 1141 (1949).

Appellees contend that the provisions of paragraph VII of testator's will constitutes a declaration of the decedent that he did not intend for appellants to take under his will and that it amounted to an express disinheritance of all other children or heirs except for those expressly named therein.

The question whether a clause in a will leaving a nominal sum to anyone who claims to be an heir or contests the will is sufficient to disinherit issue of one's child under the New Mexico Probate Code is a matter of first impression.

The courts of other jurisdictions are not in accord as to whether a "no contest clause" in a will constitutes an adequate statement of the testator's intention to disinherit children of heirs not specifically otherwise mentioned in the will. *See Goff v. Goff, supra; In re Ray's Estate*, 69 Nev. 204, 245 P.2d 990 (1952); *compare Estate of Szekely*, 104 Cal.App.3d 236, 163 Cal.Rptr. 506 (1980); *In re McClure's Estate*, 214 Cal.App.2d 590, 29 Cal.Rptr. 569 (1963); *In re Brown's Estate*, 164 Cal.App.2d 160, 330 P.2d 232 (1958); *In re Benolken's Estate, supra.*

Although the pretermitted heir statute adopted by the state of California, Cal.Prob. Code, § 90 (West 1956), varies in its wording from the language of this state's statute on pretermitted children, the import of the two statutes are substantially similar in context, and such that we think the decision of the California Court of Appeals in *In re McClure's Estate, supra*, should govern the result in the instant case.

The facts of *In re McClure's Estate supra*, closely parallel the instant case. There the daughter of a predeceased son was not named in her grandmother's will. The will also specified that the testatrix left a nominal sum ($1.00) to anyone who contested the will and claimed to be an heir to the estate. Decedent stated that she was a widow and had two sons; however, she did not mention a predeceased son. There also, the appellant argued that testatrix's failure to mention her predeceased son indicated that she had failed to consider her dead son's issue, (her granddaughter), when she wrote her will. The court considered the clause leaving one dollar to any contestant and claiming as an heir as the equivalent of a disinheritance clause and rejected appellant's contention, holding that:

> Obviously he [the predeceased son] was not an heir and could not be the subject of her bounty. The fact that the third son was not named in the will does not dictate the conclusion that the testatrix did not have in mind the daughter of that son when . . . she bequeathed $1.00 to any person who might contest her will, and claim to be an heir, and establish such fact.

Similarly to the facts in *In re McClure's· Estate, supra*, paragraph VII of decedent's will was more than a "no-contest clause." In it, testator designated a *class* of persons who might either contest his will *or* claim to be an heir to any part of his estate and establish such fact in a court of competent jurisdiction. Since an omitted child or heir does not assert his rights by contesting the will but by claiming an intestate share

cause [at the time of the will the testator] believes the child to be dead,' the Utah UPC expands protection to not only all children, but to issue of deceased children as well."

of decedent's estate,[4] for language of a will to meet the requirements of § 45–2–302(A)(1), *supra*, the clause must either mention the claimant by name *or* fairly and clearly express an intention on the part of the testator to exclude claimant as a group or class. *See Estate of Hirschi*, 113 Cal. App.3d 681, 170 Cal.Rptr. 186 (1980); *In re McClure's Estate, supra; Crump's Estate v. Freeman*, 614 P.2d 1096 (Okl.1980).

As noted in 8 Hastings L.J. 342 (1957), under the California Probate Code, *supra*, § 90:

> The California Courts in interpreting this statute [§ 90 of Probate Code] in the past have evolved certain rules and principles which they now seem to use as guides. For example, it appears that it is not essential that the claimant be named or identified specifically by the will. The use by the testator of a word which describes a class of persons, such as 'children' or 'relatives' is generally considered sufficient to exclude the application of the pretermitted heir statute. Also, *the use of. the word 'heirs' in a will to describe the class of persons who are not to participate in the testator's estate has been held sufficient to show the intention of the testator to exclude his children from participating in the estate.* [Emphasis supplied.]

In the case at bar, the language contained in paragraph VII of testator's will stating that if any person claims to be an "heir of mine and establishes such a claim in a court of competent jurisdiction" amounts to an expression by the testator of an intention to exclude appellants as *heirs* from taking under his will as a class.

> As noted in 45 Cal.L.Rev. 220 (1957): The ordinary no-contest clause, disinheriting or leaving a nominal sum to 'any other person or persons' or 'anyone who may contest this will,' has been held insufficient to show the required intent to exclude. On the other hand, clauses excluding or making nominal provisions for 'heirs' or 'persons claiming to be heirs' have been held specific enough to prevent

descendants from claiming under the [pretermitted heir] statute.

*In Estate of Szekely, supra*, the court considered a case where decedent's adopted son predeceased the testator, leaving a daughter (testator's granddaughter). The testator did not mention his predeceased son or his dead son's daughter in his will but did specify in his will that (1) he left the sum of one dollar to any person who contested the will and claimed to be an *heir* to the estate, and (2) that he had "intentionally and with full knowledge omitted to provide for my heirs" not otherwise named in his will. The court in *Szekely* discussed *In re McClure's Estate, supra*, and other California decisions dealing with claims of pretermitted heirs in cases wherein a testator had failed to specifically mention in his will such heirs by name. The court in *Szekely* stated:

> The law is clear . . . that a disinheritance clause expressly omitting heirs indicates an intent to bar children or grandchildren and such clause overcomes any statement that he had no such relatives.
>
> Absent any evidence of testator's intent *not* to omit the claimant herein . . . the disinheritance clause prevents the distribution of . . . [decedent's] estate to her as that clause does reveal a clear intent to omit any heirs not named.

Applying the above rationale to the instant case, we conclude that the language of paragraph VII of testator's will was a disinheritance clause whereby the testator effectively expressed his intention to disinherit any *heirs* of the testator, including appellants, not otherwise provided for in the will. Since testator's son had predeceased him, and was not living when testator made his will, it was not necessary for him to expressly mention his son in his will and the deceased son was not an "heir" within the meaning of the New Mexico Probate Code. See § 45–1–201(17), N.M.S. A.1978. We hold therefore, that the provisions of paragraph VII of testator's will satisfied the requirements of § 45–2–

---

4. See *Dunham v. Stitzberg*, 53 N.M. 81, 201    P.2d 1000 (1948); T. Atkinson, *supra*, at 144.

302(A)(1), *supra,* and that the trial court's decision denying appellants' claim to an intestate portion of testators' estate was not error.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

LOPEZ and NEAL, JJ., concur.