In the Matter of the ESTATE OF
Herbert Lee JONES, Deceased,

v.

Robert Lee JONES, Appellant.

No. 880121–CA.

Court of Appeals of Utah.

Aug. 8, 1988.

Stephen D. Swindle, R. Stephen Marshall (argued), Thomas E. Nelson, Salt Lake City, for appellant, Robert Lee Jones, Van Cott, Bagley, Cornwall & McCarthy.

Alan M. Williams (argued), West Jordan, for respondent, Linda Cameron.

Before JACKSON, BENCH and GARFF, JJ.

## OPINION

JACKSON, Judge:

Robert Lee Jones appeals from the judgment and order denying his objections to probate of a will drafted by his sister, Linda Cameron, and concluding he was not entitled to a share of his father's estate as a pretermitted child. He presents three principal issues: (1) Should the trial court have presumed as a matter of law that there was undue influence exerted by his sister either because of the mere fact of the father/daughter relationship or because she was the drafter of the will and its sole beneficiary? (2) Even without the operation of such a presumption, is the trial court's failure to find either a confidential relationship or no undue influence clearly erroneous? (3) Even if the will is valid, is he nonetheless entitled to an intestate share of his father's estate as a pretermit-

ted child? We vacate the judgment and order of the trial court.

Linda Cameron ("Cameron") and Robert Lee Jones ("Robert") are the surviving natural children of Herbert Lee Jones ("Jones"), who died in Salt Lake County on July 5, 1985 after living with Cameron for approximately two months. In late April, 1985, Jones was admitted to a California hospital for cancer surgery. When Cameron found this out, she travelled to California and visited Jones in the hospital on April 30. He expressed concern about his salvage grease business affairs and bills and asked her to take care of them. After looking through his papers for many hours that night, she returned to the hospital on May 1 and told Jones he needed to sign a power of attorney so she could put her name on his checking account and conduct his affairs. When he assented, she handwrote the contested document, which initially stated:

1 May 1985

I, HERBERT LEE JONES grant power of ATTORNEY to my daughter; LINDA M. CAMERON.

During the ensuing conversation, as reported by Cameron, Jones indicated that—if he didn't make it—he didn't want Robert to get anything from his estate; he wanted Cameron to have it all. Cameron told him if that was so, he needed a will, to which Jones responded, "Okay. Do it." Cameron then changed the period after her name to a comma and added the following words to the previously drafted document:

AND TO BE EXECUTER [sic] AND<br>SOLE BENEFICIARY TO<br>MY ESTATE.

Cameron then read the document to her father. He looked at it and signed it in the presence of two witnesses, Volita Jones and Terri Hurst. The trial court found that the second part had already been added to the document when Jones signed it, although Robert disputed that point.

Robert agreed that the May 1 document qualified as a will, but challenged its admission to probate on the grounds that his father lacked testamentary capacity and

that the document was obtained by Cameron's undue influence. He also claimed that, even if the will was not so obtained, he was entitled to an intestate share of his father's estate as a pretermitted child under Utah Code Ann. § 75–2–302(1) (1978) because the will itself did not show an intention to disinherit him. At trial, Robert repeatedly objected to the admission of statements made by Jones to Cameron and others to prove Jones's intent to disinherit his son, including statements that Jones believed Robert had stolen some money from him.

The trial judge made the following relevant findings: Jones had testamentary capacity when the will was executed; there was no confidential relationship between Cameron and her father at the time she drafted the document for him; and the making of the will was not procured by her undue influence. The trial judge concluded that the language of the will itself showed the intent of the decedent to intentionally omit Robert from the will, thereby precluding him from taking any part of Jones's estate by virtue of the operation of the pretermitted child statute. He added that, if the extrinsic evidence of Jones's oral declarations was considered, it would only reinforce that conclusion.

## CONFIDENTIAL RELATIONSHIP AND UNDUE INFLUENCE

■■ A confidential relationship arises when one party, after having gained the trust and confidence of another, exercises extraordinary influence over the other party. *Webster v. Lehmer*, 742 P.2d 1203, 1206 (Utah 1987). If a confidential relationship exists between two parties to a transaction, and if the superior party (in

whom trust has been reposed) benefits from the transaction, a presumption of undue influence[1] is raised. *Von Hake v. Thomas*, 705 P.2d 766, 769 (Utah 1985); *Robertson v. Campbell*, 674 P.2d 1226 (Utah 1983). In such a case, the burden shifts to the superior party to prove the absence of any unfairness by a preponderance of the evidence. *Baker v. Pattee*, 684 P.2d 632, 637 (Utah 1984).

A few relationships are presumed to be confidential, such as that of attorney and client. *Webster*, 742 P.2d at 1206; *see In re Swan's Estate*, 4 Utah 2d 277, 293 P.2d 682 (1956). In all other relationships the existence of a confidential relationship is a question of fact. *Webster*, 742 P.2d at 1206; *Baker*, 684 P.2d at 636.

On appeal, Robert asserts that, as a matter of law, a confidential relationship should have been presumed between Jones and Cameron as parent and child, giving rise in turn to a presumption that she exerted undue influence over him in order to be named as his sole beneficiary under the will.

■■ The doctrine of confidential relationship rests upon the principle of inequality between the parties and implies a position of superiority occupied by one of the parties over another. *Bradbury v. Rasmussen*, 16 Utah 2d 378, 401 P.2d 710, 713 (1965). However, the mere relationship of parent and child does not constitute evidence of such confidential relationship as to create a presumption of undue influence. *Nelson v. Nelson*, 30 Utah 2d 80, 513 P.2d 1011, 1013 (1973); *Bradbury*, 401 P.2d at 713.[2]

While kinship may be a factor in determining the existence of a legally signifi-

---

1. In the context of a testamentary disposition, "undue influence" may be established
    without showing any physical coercion or restraint.... [I]n whatever form it may appear it must, nevertheless, be made to appear from competent evidence that the will of the one accused of practicing undue influence dominated the will of the testator—that the testament is in fact and effect the will of the accused and not that of the testator.
*In re Bryan's Estate*, 82 Utah 390, 25 P.2d 602, 610 (1933).

2. *Accord Clow v. Chicago Title & Trust Co.*, 9 Ill.App.3d 168, 292 N.E.2d 44 (1972); *Burns v. Nemo*, 252 Iowa 306, 105 N.W.2d 217 (1960); *Olson v. Harshman*, 233 Kan. 1055, 668 P.2d 147 (1983); *Platt v. Platzki*, 277 Mich. 700, 270 N.W. 192 (1937); *Willetts v. Willetts*, 254 N.C. 136, 118 S.E.2d 548 (1961); *Ellis v. Potter*, 455 P.2d 92 (Okl.App.1969); *Ingersoll v. Ingersoll*, 263 Or. 376, 502 P.2d 598 (1972); *Estate of Wann*, 176 Pa.Super. 498, 108 A.2d 820 (1954); *Iacometti v. Frassinelli*, 494 S.W.2d 496 (Tenn.App.1973).

cant confidential relationship, there must be a showing, in addition to the kinship, a reposal of confidence by one party and the resulting superiority and influence on the other party.... Mere confidence in one person by another is not sufficient alone to constitute such a relationship.

*Bradbury*, 401 P.2d at 713.

Without distinguishing *Nelson* and *Bradbury*, in which the transacting parties were parents and their child or one raised as their child, appellant bases his argument on the general statement, in a case involving only a trustor/trustee relationship, that "[t]here are a few relationships (such as parent-child, attorney-client, trustee-cestui) which the law presumes to be confidential." *Blodgett v. Martsch*, 590 P.2d 298, 302 (Utah 1978). This unsupported *obiter dictum* was, unfortunately, reiterated in *Baker*, 684 P.2d at 637, another case in which no familial relationship between the transacting parties was claimed.

Notwithstanding this *dicta*, we believe that the rule in *Bradbury* reflects the current state of Utah law, i.e., the relationship of parent and child does not, in and of itself, establish a confidential relationship giving rise to a presumption of unfair dealing. The *Bradbury* opinion has been recently cited and quoted with approval for its pronouncements on confidential relationships in general. *See Webster*, 742 P.2d at 1206; *Von Hake*, 705 P.2d at 769. More importantly, subsequent to *Baker*, the unanimous court cited *Nelson* and *Bradbury* as authority for its conclusion that a relationship as brother and sister-in-law is not sufficient, standing alone, to prove a confidential relationship, although the existence of a confidential relationship could be proved otherwise. *Cunningham v.*

*Cunningham*, 690 P.2d 549, 553 (Utah 1984).

■ Because there is no presumption of a confidential relationship arising solely from the fact that parties to a transaction are parent and child, the trial court correctly declined to find a confidential relationship as a matter of law and left the burden on Robert to prove that there was, in fact, a confidential relationship and undue influence.[3]

■ In its findings of fact, the trial court determined that no such relationship existed at the time the will was drafted and executed and that no undue influence had been exerted on Jones. The findings of the trial court on these questions must be given considerable deference and will only be reversed on appeal if they are clearly erroneous. *Webster*, 742 P.2d at 1206. *See* Utah R.Civ.P. 52(a). Because there is substantial record evidence to support these findings, we will not disturb them on appeal.

## PRETERMITTED CHILD

Appellant next argues that he is entitled to an intestate share of his father's estate in spite of the May 1 will because the language of the will itself does not sufficiently evidence Jones's intent to disinherit him.

The relevant provisions of the statute in effect at the time of Jones's death state:

(1) If a testator fails to provide in his will for any of his children or issue of a deceased child, the omitted child or issue receives a share in the estate equal in value to that which he would have received if the testator had died intestate unless:

---

**3.** Appellant also makes an unsupported argument that, even in the absence of a confidential relationship, undue influence by Cameron should be presumed as a matter of law because she actively participated in the drafting and execution of the will under which she is sole beneficiary. His position is, however, contrary to the rule set forth in *In re Bryan's Estate*, 25 P.2d at 609–610, that the presumption of undue influence applies in these circumstances *if* the beneficiary was in a confidential relationship with the testator. *See Miller v. Livingstone*, 31 Utah 415, 88 P. 338, 342 (1906) (rejecting any presumption of undue influence by one who directs the drafting of a will under which he or she is to take as sole beneficiary). See also the cases reaching a similar result, collected in Annotation, *Presumption or Inference of Undue Influence from Testamentary Gift to Relative, Friend, or Associate of Person Preparing Will or Procuring its Execution*, 13 A.L.R.3d 381, 390–97 (1967).

(a) It appears *from the will* that the omission was intentional[.]

Utah Code Ann. § 75–2–302(1)(a) (1978) (emphasis added).[4]

Construing a prior pretermission statute allowing a child omitted from a parent's will to take an intestate share "unless it appears that such omission was intentional,"[5] the Utah Supreme Court held that the testator's failure to provide for a child or issue of a deceased child constituted a rebuttable presumption that the omission was unintentional. *In re Newell's Estate,* 78 Utah 463, 5 P.2d 230, 236–37 (1931). In the absence of the more restrictive statutory language "from the will," emphasized above, evidence extrinsic to the will itself, including declarations of the testator, was held admissible to rebut the presumption and establish that the omission was intentional. *Id.* 5 P.2d at 236.

The statute applicable in the instant case still extends the presumption against disinheritance to children born before execution of the will. *See id.; Estate of Uliscni,* 372 N.W.2d 759, 761 (Minn.App.1985) (applying pretermission statute that, like Utah's, covers living and afterborn children). Thus, it was Cameron's burden to show by a preponderance of the evidence that the omission of Robert was intentional. *See In re Newell's Estate,* 5 P.2d at 240–41; *Estate of Ervin,* 399 N.W.2d 200, 201 (Minn.App. 1987).

█ We agree with appellant, however, that the holding in *Newell* pertaining to the admissibility of extrinsic evidence was superseded by the legislature's adoption of the quoted language, i.e., unless "it appears from the will," in section 75–2–302(1)(a) (1978). In construing any legislative enactment, we must give effect to the legislature's underlying intent, *American Coal Co. v. Sandstrom,* 689 P.2d 1, 3 (Utah 1984), and assume that each term in the statute was used advisedly. *West Jordan v. Morrison,* 656 P.2d 445, 446 (Utah 1982). The plain meaning of the restrictive language in section 75–2–302(1)(a) (1978) is that a testator's failure to provide in his or her will for a child then living is presumptively unintentional unless an intent to omit "appears from the will" itself. *See* 2 W. Page, *Page on Wills* § 21.109 at 551, 553 (W. Bowe & D. Parker ed. 1960). This unequivocal statutory language renders evidence outside the four corners of an unambiguous will, including declarations of the decedent, inadmissible to rebut the statutory presumption.[6] *Accord Estate of Smith,* 9 Cal.3d 74, 106 Cal.Rptr. 774, 507 P.2d 78 (1973); *Smith v. Crook,* 160 Cal. App.3d 245, 206 Cal.Rptr. 524 (1984) (California statute, like Utah's, says "unless it appears from the will that such omission was intentional"); *In the Matter of the Estate of Hilton,* 98 N.M. 420, 649 P.2d 488 (App.1982) (interpreting identical statutory subsection), *cert. denied,* 98 N.M. 478, 649 P.2d 1391; *In re Estate of Cooke,* 96 Idaho 48, 524 P.2d 176, 182 (1973) (statute says "unless it appears that such omission was

---

4. Under the statute as recently amended by Laws 1988, ch. 110, § 2 (effective April 25, 1988), only those children who were born or adopted *after* the execution of a will (or, if deceased, their issue) can claim a share in a parent's estate as a pretermitted child. Utah Code Ann. § 75–2–302(1)(a) (1988). This change brings Utah's pretermitted child statute more in line with Uniform Probate Code § 2–302 (1982) (although the UPC provision does not apply to the issue of deceased afterborn children), which is based on the presumption that a testator's failure to provide for a child living at the time the will was executed was intentional. *See* note 7, *infra;* Comment, *Articles II and III of the Uniform Probate Code as Enacted in Utah,* 1976 B.Y.U.L.Rev. 425, 434. Because appellant was alive at the time his father's will was executed, he would have no claim as a pretermitted child if Jones had died after the effective date of the 1988 amendment to this section.

5. When any testator omits to provide in his will for any of his children or for the issue of any deceased child, unless it appears that such omission was intentional, such child or the issue of such child must have the same share in the estate of the testator as if he had died intestate.... 1917 Utah Comp.Laws § 6341.

6. The statements to the contrary in Wellman & Gordon, *Uniformity in State Inheritance Laws: How UPC Article II Has Fared in Nine Enactments,* 1976 B.Y.U.L.Rev. 357, 373 and BYU Journal of Legal Studies, *Summary of Utah Probate Law* 86 (1986) should, therefore, be disregarded.

intentional"); *Crump v. Freeman*, 614 P.2d 1096, 1097 (Okl.1980) (same statutory language as in *Cooke*). *See Royce v. Estate of Denby*, 117 N.H. 893, 379 A.2d 1256, 1258 (1977). The purpose of the pretermission statute is to protect the omitted child's right to take unless the will itself gives clear expression to an intentional omission. *See Crump*, 614 P.2d at 1097.

Although this part of the Utah statute has been criticized as tending to defeat a testator's actual intent and prevent intentional disinheritance,[7] it is not our function to relegislate and set out a rule different from that clearly expressed in the statute. *See In the Matter of Jackson*, 117 N.H. 898, 379 A.2d 832, 835 (1977). As the editorial board comment to section 75–2–302 (copied from the official comment to Uniform Probate Code § 2–302) points out, any potentially harsh results can be avoided by the testator:

> To preclude operation of this section it is not necessary to make any provision, even nominal in amount, for a testator's present or future children; a simple recital in the will that the testator intends to make no provision for then living children ... would meet the requirement of subdivision 1(a).

Utah Code Ann. § 75–2–302 editorial board comment (1978).

The only relevant words appearing within the confines of Jones's terse will are those "granting" Cameron "to be sole beneficiary" of his estate. There is no mention of Robert by name or by class. Contrary to the conclusion reached by the trial court, we hold that this language is insufficient to rebut the statutory presumption that Jones unintentionally failed to provide for his son in his will. A testamentary disposition of the entire estate is alone insufficient to establish that the omission of a child from a will is intentional. *Crump*, 614 P.2d at 1099. In order to rebut the statutory presumption, the testator's intent to disinherit a child living at the time of the will's execution must appear in strong and convincing language on the face of the will. *See Smith v. Crook*, 206 Cal. Rptr. at 526. The will must either mention the claimant child by name or fairly and clearly express an intention on the part of the testator to exclude the claimant as part of a mentioned group or class. *In re Matter of the Estate of Hilton*, 649 P.2d at 495. *See Estate of Hirschi*, 113 Cal.App.3d 681, 170 Cal.Rptr. 186, 188 (1980); *Estate of Hester*, 671 P.2d 54 (Okl.1983).

Because the statutory presumption against disinheritance stands unrebutted, the trial court erroneously held that Robert was not a pretermitted child under our statute. Accordingly, the judgment and order of the trial court is vacated and the case is remanded for entry of judgment in favor of appellant in accordance with this opinion. We have considered the remaining issues raised by the parties and find them meritless. No costs are awarded.

GARFF and BENCH, JJ., concur.

---

7. Wellman & Gordon, *supra* note 6, at 373–74. [Uniform Probate Code] Section 2–302 is designed ... to support testamentary intention by mitigating the effects of unintentional disinheritance. When a living child is omitted from a will, however, it is probable that the omission was intentional. *Id.* at 373.