2007 UT App 213

**Layne D. HESS, an individual, Plaintiff, Appellant, and Cross-appellee,**

v.

**Jody JOHNSTON, an individual, Defendant, Appellee, and Cross-appellant.**

**No. 20060497–CA.**

Court of Appeals of Utah.

June 21, 2007.

Rehearing Denied July 12, 2007.

Paxton R. Guymon and Joel T. Zenger, Salt Lake City, for Appellant and Cross-appellee.

David W. Scofield, Salt Lake City, for Appellee and Cross-appellant.

Before Judges DAVIS, McHUGH, and ORME.

OPINION

McHUGH, Judge:

¶ 1 Plaintiff Layne D. Hess appeals the trial court's order dismissing his complaint, with prejudice, for failure to state a claim upon which relief can be granted, *see* Utah

R. Civ. P. 12(b)(6). Defendant Jody Johnston cross-appeals, arguing that the trial court committed error when it denied her motion for sanctions under rule 11 of the Utah Rules of Civil Procedure, *see* Utah R. Civ. P. 11. We affirm.

BACKGROUND [1]

■ ¶ 2 Hess and Johnston started dating in mid-April 2004 and within three months, they decided to marry. Johnston found an engagement ring she liked, and Hess commissioned a jeweler to craft one like it. The couple planned to marry sometime in November 2004, but mutually decided that they would take their time in planning the wedding to ensure their finances were in order.

¶ 3 About this time, Johnston told Hess that, during their engagement, she wanted to go on some trips and wanted Hess to have a vasectomy. Hess complied with these requests. Hess began by paying for the couple to take a seven-day cruise to Alaska at the end of July. In August, Hess underwent the vasectomy procedure requested by Johnston. And in September, after Johnston expressed an interest in traveling to France to introduce Hess to friends she had met while living there years earlier, Hess paid for the couple to travel to France for three weeks. Before leaving on the trip, Hess paid the balance on the custom engagement ring so that he could present Johnston with it while in France. After returning from France, Hess and Johnston twice rescheduled the wedding, first, from November 2004 to May 5, 2005, and then to July 9, 2005. In October 2004, Johnston also asked Hess to help purchase a vehicle for her son. Hess contributed $2400 toward the automobile.

¶ 4 In late April 2005, without any forewarning or explanation, Johnston returned the engagement ring to Hess and informed him that she would not be his wife. Hess attempted, numerous times, to obtain an explanation from Johnston, but she refused to offer any excuse for breaking off the engagement.

---

1. In considering the correctness of an order dismissing a complaint, we assume the truthfulness of each of the facts alleged by plaintiff. *See* *Oakwood Vill. L.L.C. v. Albertsons, Inc.,* 2004 UT 101, ¶ 9, 104 P.3d 1226.

¶ 5 In November 2005, Hess brought suit against Johnston seeking restitution under four different legal theories: (1) conditional gift, (2) unjust enrichment, (3) promissory estoppel or reasonable reliance, and (4) breach of contract. Central to all the claims is the argument that but for Johnston's promise to marry him, Hess would not have paid for the engagement ring, the Alaskan cruise, the trip to France, or the vehicle for Johnston's son. Hess sought restitution in the form of reimbursement for Johnston's portion of the travel expenses, the medical costs of the vasectomy and a reversal procedure, the money given toward the vehicle, and the difference between the purchase price of the engagement ring and its eventual sale price. In response, Johnston sought sanctions under rule 11 of the Utah Rules of Civil Procedure and moved to dismiss the complaint, with prejudice, for failure to state a claim upon which relief can be granted. The trial court denied the motion for sanctions but dismissed the complaint on the ground that Utah has abolished the common law cause of action for breach of a promise to marry. Both parties appeal.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 Johnston contends that it was error for the trial court to deny her motion for sanctions under rule 11 of the Utah Rules of Civil Procedure, *see* Utah R. Civ. P. 11.

> [T]he standard of review for evaluating the denial or imposition of rule 11 sanctions involves a three-tiered approach: "(1) findings of fact are reviewed under the clearly erroneous standard; (2) legal conclusions are reviewed under the correction of error standard; and (3) the type and amount of sanctions to be imposed [are] reviewed under an abuse of discretion standard."

*Morse v. Packer,* 2000 UT 86, ¶ 16, 15 P.3d 1021 (quoting *Morse v. Packer,* 1999 UT 5, ¶ 10, 973 P.2d 422).

¶ 7 Hess argues that the trial court erred when it granted Johnston's motion to dismiss for failure to state a claim upon which relief can be granted under rule 12(b)(6) of the Utah Rules of Civil Procedure, *see* Utah R. Civ. P. 12(b)(6). "A [r]ule 12(b)(6) motion to dismiss admits the facts alleged in the complaint but challenges the plaintiff's right to relief based on those facts." *Oakwood Vill. L.L.C. v. Albertsons, Inc.,* 2004 UT 101, ¶ 8, 104 P.3d 1226 (quotations omitted). Therefore, when reviewing a trial court's grant of a 12(b)(6) motion, "we accept the factual allegations in the complaint as true and interpret those facts and all inferences drawn from them in the light most favorable to the plaintiff as the non-moving party." *Id.* at ¶ 9. After viewing the facts in this light, the question of whether a complaint "was properly dismissed for failure to state a claim is a question of law, which we review for correctness." *Davis v. Central Utah Counseling Ctr.,* 2006 UT 52, ¶ 16, 147 P.3d 390.

## ANALYSIS

### I. Rule 11 Sanctions

¶ 8 Johnston contends that because the Utah Supreme Court has abolished the cause of action for breach of a promise to marry, Hess's claims were frivolous and merited sanctions under rule 11. Rule 11 of the Utah Rules of Civil Procedure provides in relevant part:

> (b) . . . By presenting a pleading, written motion, or other paper to the court . . . an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
>
> . . . .
>
> (b)(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law[.]

Utah R. Civ. P. 11(b). However, "[r]ule 11 does not impose a duty to do perfect or exhaustive research. The appropriate standard is whether the research was objectively reasonable under all the circumstances." *Barnard v. Sutliff,* 846 P.2d 1229, 1236 (Utah 1992).

¶ 9 Johnston argues that *Jackson v. Brown,* 904 P.2d 685 (Utah 1995), clearly

abolished the cause of action for breach of a promise to marry, including claims of the type asserted by Hess. Therefore, she reasons that sanctions were proper because, given the settled state of the law, Hess would not have brought his claims had he first made the reasonable inquiry required by rule 11.[2] We disagree. First, we begin by noting that "the reasonable inquiry analysis does not hinge solely on whether the law is clear. [Instead, t]he focus should be on what the attorney actually did in researching the law." *Barnard*, 846 P.2d at 1236–37. Second, and perhaps more importantly, we disagree with Johnston's contention that *Jackson* clearly bars Hess's claims. Instead, we read *Jackson* as expressly acknowledging the possibility that some economic claims arising out of a failed engagement may still be viable.

¶ 10 In *Jackson*, the Utah Supreme Court examined the common law cause of action for breach of a promise to marry. *See* 904 P.2d at 686–87. In abolishing that claim from Utah's common law, the court first examined the history of the cause of action, noting that it "arose over four hundred years ago," when marriage was viewed primarily as an economic transaction. *Id.* at 686. Because of the economic nature of matrimony, the cause of action for breach of promise provided an economic remedy to persons who had relied to their detriment on a recanted promise of marriage. *See id.* The court noted, however, that over time "American marriage customs ha[ve] so changed as to be totally unlike those prevailing when breach of promise first became actionable." *Id.* The court reasoned that because modern concepts of marriage focus primarily on emotion—not economics— the breach of promise cause of action had lost its historical moorings such that "an action developed to remedy the economic losses resulting from the withdrawal of a marriage promise ... [was being] used in this day and age to redress the *emotional losses* that follow[ed]." *Id.* at 687 (emphasis added). The supreme court found this use of a breach of promise claim antithetical to modern policy considerations and held that

the cause of action was no longer "the proper vehicle" to recover for emotional damages where the "losses complained of are pride, love, and esteem." *Id.* Rather, the court held that recovery for emotional damages was properly pursued only through a claim for intentional infliction of emotional distress and only if the strict elements of such a claim could be established. *See id.* at 687–88.

¶ 11 Despite abolishing the cause of action for breach of a promise to marry, the *Jackson* court specifically left open the question of whether economic damages arising from a broken engagement could ever be recovered under alternate legal theories. All the justices agreed that, despite abolishing the cause of action for breach of a promise to marry, "no injury to a plaintiff, upon proper showing, goes unremedied." *Id.* at 687. A majority of the court, however, postponed deciding which legal theories would support recovery of economic damages stemming from a broken engagement. *See id.* at 688 (Stewart, J., concurring, joined by Zimmerman, C.J. & Russon, J.) (stating that the issue of what theories would support a recovery of economic damages "should be addressed ... only when it is properly presented to [the c]ourt and properly argued by the parties"). Alternatively, Justice Durham, joined by Justice Howe, anticipated the question and suggested that "any economic losses suffered because of [plaintiff's] reasonable reliance upon [defendant's] promise to marry ... may be recoverable under a theory of reasonable reliance or breach of contract." *Id.* at 687 (Durham, J., concurring, joined by Howe, J.).

¶ 12 Because *Jackson* did not clearly foreclose claims for purely economic damages, we cannot say that Hess's reading of the law, alone, supports the conclusion that he did not make a reasonable inquiry into the claims, defenses, and other legal contentions contained in the complaint. Rule 11 does not "require the attorney to reach the correct legal position from the research. It is enough that the attorney's reading of the law

---

**2.** Because Johnston's argument raises a question of law, we review it for correctness under the second tier of the rule 11 standard of review. *See Barnard v. Sutliff*, 846 P.2d 1229, 1236 (Utah 1992) (reviewing, for correctness, whether existing law was clear such that attorney's decision to proceed with claims demonstrated a failure to make a reasonable inquiry under rule 11).

is a reasonable one." *Barnard,* 846 P.2d at 1236. Therefore, we affirm the trial court's denial of Johnston's motion for rule 11 sanctions.

## II. Failure to State a Claim

¶ 13 Despite finding that *Jackson* does not clearly bar his claims, we nonetheless affirm the trial court's dismissal of Hess's complaint because the facts as alleged cannot support recovery under any of the theories pleaded. *Cf. Griffith v. Griffith,* 1999 UT 78, ¶ 8, 985 P.2d 255 (affirming on alternative grounds).

### A. Conditional Gift

■ ¶ 14 Assuming, without deciding, that Utah would allow recovery of engagement gifts under a theory of conditional gift, Hess's claims fail as a matter of law because he has not alleged facts that could establish that the travel, vasectomy,[3] or money for the vehicle were conditioned on the marriage taking place.[4] Instead, Hess urges this court to adopt the position that any gift given during the engagement period carries an implied condition of marriage. We decline to do so. If we were to imply a condition on all gifts given during the engagement period, every gift would be recoverable regardless of the size, cost, significance, or nature of the gift, and without regard to the surrounding circumstances under which the gift was given.

> Surely, the donor will give some gifts during the engagement period that are intended as absolute gifts. However, with an implied condition, the donor would have to expressly indicate that he does not expect the gift back in order to make an absolute gift .... turn[ing] traditional gift law on its head.

*Cooper v. Smith,* 155 Ohio App.3d 218, 2003–Ohio–6083, 800 N.E.2d 372, at ¶ 26.

3. Under the facts of this case, it is not necessary to address whether a vasectomy, undertaken by one person in a relationship, can ever be a "gift" to the other person in the relationship.

4. We note the possible exception of the engagement ring. *See, e.g., Fierro v. Hoel,* 465 N.W.2d 669, 671 (Iowa Ct.App.1990) ("An engagement ring given in contemplation of marriage is an impliedly conditional gift."); *Heiman v. Parrish,* 262 Kan. 926, 942 P.2d 631, 634 (1997) ("Once it

¶ 15 Because we do not accept Hess's contention that all gifts given during the engagement period carry an implied condition of marriage, and because "one asserting the delivery [of a gift] was made on some condition ... has the burden of establishing such condition" as an element of recovery under a conditional gift theory, *Fierro v. Hoel,* 465 N.W.2d 669, 671 (Iowa Ct.App.1990), we examine Hess's complaint for allegations that could support his contention that the gifts were conditional.

■ ¶ 16 Hess's complaint states that, in retrospect, Hess would not have made the expenditures but for Johnston's promise to marry him. But this assertion, relying on hindsight, even if true, is not sufficient to establish that the gifts were conditioned on the marriage taking place. "Whether a gift is conditional or absolute is a question of the donor's intent, to be determined from any express declaration by the donor *at the time of the making of the gift* or from the circumstances." 38 Am.Jur.2d *Gifts* § 72 (1999) (emphasis added).

¶ 17 Here, Hess's complaint fails to include any facts that could demonstrate, either expressly, by the circumstances, or by the nature of the gifts that his intent was to condition the gifts on the marriage taking place. *Cf. Mace v. Tingey,* 106 Utah 420, 149 P.2d 832, 834 (1944) (evaluating "the intention of the donor, the situation and relationship of the parties, the kind and character of the property, and the things said, written or done" in determining whether an irrevocable gift was given (emphasis omitted)). First, Hess does not allege that he expressly conditioned the gifts when he gave them. Second, the alleged circumstances existing at the time the gifts were made do not imply that the gifts were conditional. *See, e.g., Maiora-*

is established the ring is an engagement ring, it is a conditional gift."). However, because Johnston returned the ring, Hess received back exactly that which he gave. Consequently, he has already received restitution, and this court need not address whether the gift of an engagement ring carries with it an implied condition of marriage requiring its return when the wedding does not ensue.

*na v. Rojas,* 787 N.Y.S.2d 678, 3 Misc.3d 1107, No. 94988KCV2003, 2004 WL 1258073, 2004 N.Y. Misc. LEXIS 669 (N.Y. Civ.Ct. June 3, 2004) (concluding that ring was not conditional gift when circumstances showed it was given on donee's birthday). *But see, e.g., Fanning v. Iversen,* 535 N.W.2d 770, 772 (S.D.1995) (holding that circumstances surrounding gift of money implied a condition of marriage where check memo indicated money was for wedding expenses). When evaluating the circumstances surrounding the gift, some jurisdictions will examine the purpose of the gift and inquire whether that purpose can be achieved *only* by the marriage taking place. *See, e.g., Wagener v. Papie,* 242 Ill. App.3d 354, 182 Ill.Dec. 417, 609 N.E.2d 951, 953–54 (1993) (examining circumstances surrounding gift/sale of family home to future son-in-law and finding that purpose of gift— to use home as marital home—would be frustrated when the marriage did not ensue); *Cooper,* 155 Ohio App.3d 218, 800 N.E.2d 372, at ¶¶ 25–27, 32 (finding gift of improvements to the donee's home were not conditional where donor "merely presumed" but did not articulate the intention that they would live in the improved home after they wed); Restatement of Restitution § 58 cmt. c & illus. 5 (1937) (noting that the gift of a car to a putative future son-in-law for the purpose of a honeymoon road trip may be recoverable because the purpose may only be achieved if the marriage ensues). Here, the facts alleged cannot support the conclusion that the purposes of the gifts were frustrated when the wedding did not take place. The complaint states that the purpose of the Alaskan cruise was to travel for pleasure before the wedding. The same purpose applied to the Paris trip, which also had the added purpose of allowing Johnston an opportunity to introduce Hess to her friends. The vasectomy was for the purpose of mutuality in birth control.[5] And, the gift of money to Johnston's son was for the purpose of allowing him to purchase a vehicle. All of these purposes were achieved despite the fact that the parties did not marry. Thus, Hess's complaint fails to state any facts that

suggest the circumstances surrounding these gifts implied they were conditioned on the marriage.

¶ 18 Finally, the nature of the gifts does not give rise to an inference that they were inherently conditional. Some jurisdictions have recognized that gifts, like engagement rings, carry with them an implied condition of marriage due to the inherent symbolism of the gift. *See, e.g., Fierro,* 465 N.W.2d at 671 ("The inherent symbolism of [an engagement ring] forecloses the need to establish an express condition that marriage will ensue."); *Heiman v. Parrish,* 262 Kan. 926, 942 P.2d 631, 634 (1997) ("[E]ngagement rings should be considered, by their very nature, conditional gifts given in contemplation of marriage."); *see also* Restatement of Restitution § 58 cmt. c (noting that a donor may be entitled to restitution "if the gift is an engagement ring, a family heirloom or some other thing intimately connected with the marriage"). Here, the nature of the gifts— trips, a vasectomy, and cash given to a third party—carry no inherent inference that they were conditioned on the marriage.

¶ 19 Thus, even if Utah recognized recovery under a theory of conditional gift, which we do not decide today, Hess's claim for recovery would be barred because none of the alleged facts support the conclusion that at the time he made the gifts, he did not intend for them to take effect until the marriage ensued. Instead, the facts alleged in the complaint can only be read to support the conclusion that Hess intended an unconditional gift. We do recognize that the alleged facts suggest that the reason Hess gave the unconditional gifts was because he and Johnston were engaged. However, the reason for a gift should not be confused with a donor's intent that the gift be revokable. " 'Many gifts are made for reasons that sour with the passage of time.' Unfortunately, gift law does not allow a donor to recover/revoke an inter vivos gift simply because his or her reasons for giving it have 'soured.' " *Cooper v. Smith,* 155 Ohio App.3d 218, 2003–Ohio– 6083, 800 N.E.2d 372, at ¶ 25 (quoting *Alba-*

---

**5.** Johnston had already undergone a tubal ligation, but remained concerned about the possibili-

ty of pregnancy.

*nese v. Indelicato,* 25 N.J. Misc. 144, 51 A.2d 110 (1947)); *see also* Restatement of Restitution § 58 (1937) ("A person who has conferred a benefit upon another, manifesting that he does not expect compensation therefor, is not entitled to restitution merely because his expectation that an existing relation will continue or that a future relation will come into existence is not realized, unless the conferring of the benefit is conditioned thereon."). We therefore affirm the trial court's dismissal of Hess's cause of action for recovery under a theory of conditional gift.

### B. Unjust Enrichment

¶ 20 Hess's complaint does not allege facts sufficient to sustain a claim for restitution under a theory of unjust enrichment. To state a claim for unjust enrichment, a plaintiff must allege facts supporting three elements: "(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Jeffs v. Stubbs,* 970 P.2d 1234, 1248 (Utah 1998) (quotations omitted). Although Hess has pleaded facts that support the first two of these elements, his complaint fails to allege facts that can support the conclusion that it would be inequitable for Johnston to retain the benefits of the gifts without payment.

¶ 21 Unjust enrichment occurs when a person has and retains money or benefits that in justice and equity belong to another; however, "[t]he fact that a person benefits another is not itself sufficient to require the other to make restitution." *Fowler v. Taylor,* 554 P.2d 205, 209 (Utah 1976). Money or benefits that have been "officiously or gratuitously furnished are not recoverable." *Jeffs,* 970 P.2d at 1248 (quotation omitted). A person acts gratuitously when, at the time he conferred the benefit, "there was no expectation of a return benefit,

compensation, or consideration." *Id.* at 1246. As previously discussed, Hess's complaint fails to allege that, at the time the vacations, vasectomy, and money for the vehicle were given, he intended anything other than an unconditional gift. "[E]nrichment of the donee is the intended purpose of a gift, [therefore,] there is nothing 'unjust' about allowing [the donee] to retain the gifts she received ... in the absence of fraud, overreaching or some other circumstance."[6] *Cooper,* 155 Ohio App.3d 218, 800 N.E.2d 372, at ¶ 15. Thus, the benefits were gratuitously bestowed on Johnston, and the trial court properly dismissed Hess's unjust enrichment claim.

### C. Promissory Estoppel[7]

¶ 22 Like unjust enrichment, promissory estoppel is an equitable remedy and should be employed where injustice can be avoided only by enforcement of the promise. To state a claim for promissory estoppel, Hess must allege four elements:

(1) [t]he plaintiff acted with prudence and in reasonable reliance on a promise made by the defendant; (2) the defendant knew that the plaintiff had relied on the promise which the defendant should reasonably expect to induce action or forbearance on the part of the plaintiff or a third person; (3) the defendant was aware of all material facts; and (4) the plaintiff relied on the promise and the reliance resulted in a loss to the plaintiff.

*Youngblood v. Auto–Owners Ins. Co.,* 2007 UT 28, ¶ 16, 158 P.3d 1088 (quotations omitted). Here, Hess has failed to allege facts that would support the first element, that he acted with prudence and reasonable reliance on Johnston's promise to marry.

¶ 23 A promise to marry is unique in that it is not generally considered enforceable, but instead is made for the purpose of "allow[ing] a couple time to test the permanency of their feelings." *Fierro v. Hoel,* 465 N.W.2d 669, 672 (Iowa Ct.App.1990). Thus, the fact that the engagement period is, in essence, a test period makes reliance on the

---

6. Hess has not alleged that Johnston fraudulently promised to marry him.

7. Hess also characterizes his claim for promissory estoppel as a claim of reasonable reliance. We, therefore, treat them together under the rubric of promissory estoppel.

promise of marriage inherently problematic because "[w]hen either party lacks ... assurance, for whatever reason, the engagement should be broken." *Id.; see also Jackson v. Brown*, 904 P.2d 685, 687 (Utah 1995) ("It is certainly the policy of the state to uphold marriage vows. However, we see no benefit in discouraging or penalizing persons who realize, *before* making these vows, that for whatever reason, they are unprepared to take such an important step.").[8] This is especially true when, as here, the couple had not even set an actual date for their nuptials.[9] *Cf. Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky.1999) (holding that recovery was unavailable because where no wedding date is set, the plaintiff could not "affirmatively demonstrate the parties' final and serious intent to enter into marriage"). Without foreclosing the possibility that, in some instances, the acts undertaken in reliance on a promise of marriage can be so intertwined with the promise itself that reliance may be reasonable,[10] in this instance, Hess's complaint fails to allege facts that can support the conclusion that he was acting prudently and reasonably on Johnston's promise of marriage. All that can be inferred from the facts alleged in the complaint is that Hess made several irrevocable gifts during the engagement period. Thus, this is not a situation where "injustice can be avoided" only by awarding restitution damages, *Skanchy v. Calcados Ortope SA*, 952 P.2d 1071, 1077 (Utah 1998), and Hess's promissory estoppel claim fails as a matter of law.

## D. Breach of Contract

¶ 24 Similarly, even assuming without deciding that *Jackson v. Brown*, 904 P.2d 685 (Utah 1995), does not preclude a claim for breach of contract based on reciprocal promises to marry, Hess's claim fails because his allegations cannot support a conclusion that the damages were causally related to the breach.

¶ 25 Hess does not allege that Johnston made any promise to repay him if the marriage did not ensue; she never promised to pay for half of the travel, or to bear the cost of the vehicle herself. The only promise Johnston made was to marry Hess. Thus, in order to recover general damages, Hess would be required to show that the damages or injuries he sustained "flow[ed] naturally from the breach" of that promise. *Machan v. UNUM Life Ins. Co. of Am.*, 2005 UT 37, ¶ 15, 116 P.3d 342 (quotations omitted). Or, to recover consequential damages, Hess must demonstrate that the damages he sustained were "reasonably within the contemplation of, or reasonably foreseeable, by the parties at the time the contract was made." *Id.* (quotations omitted). Under the circumstances of this case, none of the allegations show how restitution for gifts of travel, a vasectomy, and money to a third party flow naturally from a breach of a promise to marry or were reasonably contemplated by the parties at the time they decided to wed. As previously discussed, none of these gifts or the circumstances under which they were given suggest that they were in any way conditioned on the promise to marry being fulfilled. Additionally, neither the travel, the vasectomy, nor the gift of money to Johnston's son were preparatory acts required to

---

8. After all,

> [w]hat fact justifies the breaking of an engagement? The absence of a sense of humor? Differing musical tastes? Differing political views? The painfully learned fact that marriages are made on earth, not in heaven. They must be approached with intelligent care and should not happen without a decent assurance of success. When either party lacks that assurance, for whatever reason, the engagement should be broken. No justification is needed. Either party may act. Fault, impossible to fix, does not count.

> *Fierro v. Hoel*, 465 N.W.2d 669, 672 (Iowa Ct. App.1990).

9. Hess does allege that in late 2004 the couple eventually set an actual wedding date for May 5,

2005. However, at the time the trips were taken, the vasectomy was performed, and the money was given to Johnston's son, the couple had not yet set an actual date for a wedding but were, instead, tentatively planning to marry sometime in November 2004.

10. As noted in *Jackson v. Brown*, 904 P.2d 685 (Utah 1995), it may be reasonable, under certain circumstances, to rely on another's promise of marriage when undertaking "normal expenses attendant to a wedding." *Id.* at 687. However, we do not reach that question because Hess is not seeking recovery of expenses directly related to a wedding.

be performed under the contract to marry. To hold otherwise would give rise to a claim for breach of contract—albeit for economic damages instead of emotional damages— "any time a person, for whatever reason, cancels or indefinitely postpones wedding plans." *Jackson*, 904 P.2d at 687. This result is clearly "contrary to the public policy of this state" because "such an action [would] be readily amenable to abuse [and] would discourage individuals with legitimate doubts or concerns about a planned wedding from cancelling the event." *Id.* Therefore, Hess's claims for restitution under a breach of contract theory were properly dismissed as a matter of law.

## CONCLUSION

¶ 26 Rule 11 sanctions are inappropriate where, as here, counsel's interpretation of existing law is reasonable and there is no other evidence demonstrating counsel's failure to make a reasonable inquiry required by rule 11. Therefore, the trial court's denial of Johnston's motion for sanctions was proper. It was also proper for the trial court to dismiss Hess's complaint because the facts alleged could not support recovery of restitution under any of the grounds pleaded.

¶ 27 Affirmed.

¶ 28 WE CONCUR: JAMES Z. DAVIS and GREGORY K. ORME, Judges.