2013 UT App 208

# THE UTAH COURT OF APPEALS

ANGELINE HOWARD,
Plaintiff and Appellant,
*v.*
SPYROS MANES AND CARYN SORENSEN MANES,
Defendants and Appellees.

Opinion
No. 20120070-CA
Filed August 22, 2013

Second District, Farmington Department
The Honorable John R. Morris
No. 080700226

Craig L. Taylor and J. Adam White, Attorneys for
Appellant
Sara E. Bouley and Felicia B. Canfield, Attorneys
for Appellees

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGES
WILLIAM A. THORNE JR. and MICHELE M. CHRISTIANSEN
concurred.

ROTH, Judge:

¶1 Plaintiff Angeline Howard (Angie), in her capacity as the personal representative of the estate of her mother, Thelma Manes Kolendrianos (the estate), appeals the district court's decision to grant summary judgment to Thelma's brother, Defendant Spyros Manes (Sam).[1] We affirm.

---

1. Because Angie, as the plaintiff, acts as the representative of the estate in this case, we refer to the plaintiff in this decision as the estate. However, she also has an individual role in the pertinent

(continued...)

## BACKGROUND[2]

¶2    This case involves a dispute over whether a constructive trust should be imposed with respect to certain real property, known as Parcel 136, in Davis County, Utah. According to the estate, in 1996 Thelma and Sam's mother, Eugenia Manes (Yia Yia),[3] transferred Parcel 136 to herself, Sam, and Thelma with the intent to create an oral trust to hold Parcel 136 for the benefit of the transferees as well as for the benefit of Sam's and Thelma's children (collectively, the grandchildren). Over the next decade, the three acted consistently with the creation of such a trust. Following Thelma's death in August 2001, Yia Yia and Sam transferred Parcel 136 to Sam and his wife Caryn as joint tenants. According to the estate, Sam refused to give the grandchildren their interest in the property. The estate filed suit against Sam, asserting multiple claims that all depended on Sam holding title to Parcel 136 subject to a constructive trust for the benefit of the grandchildren.

¶3    The estate alleged the creation of a constructive trust under theories of oral express trust and unjust enrichment. In support of the oral express trust claim, the estate relied on various statements made by Thelma and Sam, which the estate argued show their

---

1. (...continued)
facts, and where that is the case we refer to her as Angie, as do the parties. Sam's wife Caryn is also involved in the litigation as a defendant, but we refer only to Sam for the sake of simplicity.

2. In reviewing a district court's grant of summary judgment, we view "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *See Orvis v. Johnson,* 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted).

3. Yia Yia (γιαγιά) is Greek for grandmother. *See* Babylon, *English to Greek Translation,* http://translation.babylon.com/english/to-greek (last visited Aug. 14, 2013). We refer to Eugenia Manes as Yia Yia because the parties consistently refer to her this way in their briefs.

intent to create a trust, even though that intent was never reduced to writing. According to the estate, between the fall of 1999 and her death in August 2001 after a prolonged battle with cancer, Thelma made several statements to her daughters, Angie and Jeannie, as well as to a friend, Dorothy, generally explaining that she, Sam, and Yia Yia had a verbal agreement to hold Parcel 136 for the benefit of the grandchildren. Thelma also instructed Angie and Jeannie that if something should happen to Sam and she was for some reason incapacitated and could not act according to the verbal agreement, Angie and Jeannie should make sure that Sam's children received their share of Parcel 136. The estate also alleged that after Thelma's death, between late 2001 and early 2005, Sam had several conversations with Angie that can be reasonably interpreted to indicate that Sam acknowledged the intent to create a trust with respect to Parcel 136.

¶4     The estate also relies on several deeds that transferred the ownership of Parcel 136 among Yia Yia, Sam, and Thelma, arguing that those transfers are consistent with their intent to create a trust. The first deed was recorded in June 1996, when Yia Yia conveyed Parcel 136 to Sam, Thelma, and herself in joint tenancy with rights of survivorship. Another deed was recorded in May 1999, transferring Parcel 136 to Thelma; but one month later, Thelma transferred Parcel 136 back to Yia Yia, Sam, and herself in joint tenancy with rights of survivorship. The estate explains that Parcel 136 was mistakenly transferred to Thelma with another parcel of property, so when she discovered the mistake, she transferred it back. Thelma died in 2001. Then in 2002, Yia Yia and Sam, the surviving title holders, transferred Parcel 136 to Sam and his wife as joint tenants with rights of survivorship in order to avoid any complications should Yia Yia require needs-based government assistance as she aged and her health deteriorated. According to the estate, Thelma's and Sam's statements, considered in conjunction with the series of transfers of Parcel 136, evinced their intent to create a trust in favor of the grandchildren.

¶5     In the alternative, the estate asked the district court to impose a constructive trust under a theory of unjust enrichment.

According to the estate, Thelma and her family built a number of improvements on Parcel 136 sometime "[d]uring th[e] 1999 time frame" when Thelma transferred the parcel back to Yia Yia, Sam, and herself as joint tenants.[4] Thelma obtained a $35,000 loan to finance construction of a large barn, and her family also "built ditches, piped the property, planted seeds, harvested crops, and paid the property taxes until Thelma's death." Sam has never participated in the family's farming operation, nor did he assist financially or otherwise in constructing the barn and other improvements. "These facts," the estate argues, "compel imposition of an equitable constructive trust as to one-half of Parcel 136."

¶6     Sam moved for summary judgment. In support of his motion, Sam relied on the deeds, arguing that the transfers with full rights of survivorship demonstrated an intent to convey Parcel 136, not to the grandchildren, but to the survivor of the grantees. In particular, Sam argued that the final transfer after Thelma's death, from Yia Yia and Sam, as the survivor grantees, to Sam plainly demonstrated that he, and not the grandchildren, was the intended owner of the property. Sam also argued that Thelma's statements to Angie and Jeannie were hearsay and not admissible to prove any intent to create a trust. He went on to argue that the remaining evidence was insufficient to create a genuine issue of material fact as to the intent to create a trust. Sam also contended that the estate's claim was barred by the statute of frauds because there was no signed writing establishing a trust with respect to Parcel 136, and no exception to the requirement of a writing could be shown. Thus, Sam argued that there were no genuine issues of material

---

4. It is unclear from the briefs or the record whether Thelma's family constructed the improvements before or after the 1999 conveyance. The estate's brief states that "[d]uring this ~ 1999 time frame, . . . Thelma . . . paid to have a large [barn] built on [Parcel] 136." (Second alteration in original.) It places construction of the other improvements in the same general time frame before Thelma's death on August 26, 2001.

fact as to the creation of a constructive trust, and he was entitled to judgment as a matter of law on the estate's claims against him.

¶7      In response, the estate argued that Thelma's statements were not inadmissible hearsay and that even if they were, there was enough other evidence, especially in Sam's own statements, to create an issue of material fact as to the intent to create a trust. The estate further argued that under the circumstances, the creation of an oral express trust with respect to Parcel 136 fell within an exception to the statute of frauds. The estate thus contended that genuine issues of material fact precluded summary judgment. The district court granted Sam's motion for summary judgment, and the estate now appeals.


ISSUE AND STANDARD OF REVIEW

¶8      The estate challenges the district court's decision to grant summary judgment to Sam, which presents a question of law that we review for correctness. *See Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c).


ANALYSIS

I. Sam Met His Burden on Summary Judgment.

¶9      The estate first argues that Sam failed to meet his initial burden of showing that he is entitled to summary judgment because he failed to show that he did not hold Parcel 136 in trust for the grandchildren. Because Sam has moved for summary judgment and would not bear the burden of proof at trial, he must "provide factual evidence establishing that there is no genuine issue of material fact." *See Orvis*, 2008 UT 2, ¶ 16.

¶10    In moving for summary judgment, Sam relied on the series of deeds that transferred Parcel 136, beginning with the transfer by Yia Yia to Thelma, Sam, and herself in 1996 and ending with the final transfer to Sam in 2002, as affirmative evidence that he was the actual and intended owner of Parcel 136. The estate argues that this was insufficient to meet Sam's initial burden on summary judgment because he was required to show that there was no material question of fact as to its claim that he held the property in trust based on the facts upon which it relied in support of its claims. However, the deeds themselves were adequate to support Sam's initial burden because the sequence of transfers supports a presumption that the deeds conveyed Parcel 136 to Sam. *See* Utah Code Ann. § 57-1-3 (LexisNexis 2010) ("A fee simple title is presumed to be intended to pass by a conveyance of real estate, unless it appears that a lesser estate was intended."); *see also Rawlings v. Rawlings*, 2010 UT 52, ¶ 28, 240 P.3d 754 ("[W]here proving . . . intent [to create a trust] will be contrary to an otherwise valid deed, the evidence of the trust must be clear and convincing."). Accordingly, the burden shifts to the estate, which must overcome that presumption by presenting facts sufficient to raise a material question as to whether Sam actually held Parcel 136 in a constructive trust rather than in fee simple. Thus, we conclude that Sam met his initial burden on the motion for summary judgment.

## II. The Estate Is Not Entitled to Imposition of a Constructive Trust.

¶11    The estate argues that, contrary to the district court's decision, there were factual issues as to whether the court should impose a constructive trust to hold Parcel 136 for the benefit of the grandchildren. To establish a constructive trust, the estate relies on theories of oral express trust and unjust enrichment. *See Rawlings*, 2010 UT 52, ¶¶ 26–29 (describing what a plaintiff must prove to impose a constructive trust for unjust enrichment and an oral express trust). We hold that the district court correctly granted summary judgment to Sam on both issues.

A.     The Estate Cannot Establish an Oral Express Trust.

¶12     "Oral express trusts have certain fundamental characteristics in common with traditional trusts because, like traditional trusts, they are the manifestation of a settlor's intent with regard to property." *Id.* ¶ 26 (citation and internal quotation marks omitted). The main characteristic they share is "the imposition of obligations on a trustee to act for the benefit of [beneficiaries] as to matters within the scope of the [trust]." *Id.* (alterations in original) (citation and internal quotation marks omitted). "Like trusts created by a valid writing, constructive trusts imposed to give effect to oral express trusts" can be characterized as creating "a fiduciary relationship with respect to property, arising as a result of a *manifestation of an intention to create it* and subjecting the person in whom the title is vested to equitable duties to deal with it for the benefit of others." *Id.* (citation and internal quotation marks omitted).

¶13     Nevertheless, even "[w]here the transfer of land was made with the intent to create such a trust, the trust will generally fail unless evidenced by a writing that complies with the Statute of Frauds." *Id.* ¶ 27. "Because oral express trusts do not meet these requirements, they will only be given effect in certain circumstances." *Id.* (citation and internal quotation marks omitted). And if the circumstances are found, "the constructive trusts are deemed to arise[] by operation of law and are not within the statute of frauds." *Id.* (alteration in original) (citation and internal quotation marks omitted). In this regard, our supreme court has adopted section 45 of the Restatement (Second) of Trusts, which

> applies when the transferor of land intends for the transfer to benefit someone other than the transferor or the transferee:
>
> "(1) Where the owner of an interest in land transfers it inter vivos to another in trust for a third person, but no memorandum properly evidencing the intention to create a trust is signed, as required by

the Statute of Frauds, and the transferee refuses to perform the trust, the transferee holds the interest upon a constructive trust for the third person, *if, but only if*

(a) the transferee by fraud, duress or undue influence prevented the transferor from creating an enforceable interest in the third person, or

(b) the transferee at the time of the transfer was in a confidential relation to the transferor, or

(c) the transfer was made by the transferor in anticipation of death."

*Id.* ¶ 28 (emphasis added) (quoting Restatement (Second) of Trusts § 45(1) (1959)). "In short, the imposition of a constructive trust [by way of an oral express trust] under this section of the Restatement . . . requires proof that the transferor of land intended to create a trust and that" other circumstances exist, such as the existence of a confidential relationship between the transferee and transferor at the time of the transfer. *Id.* "And where proving this intent will be contrary to an otherwise valid deed, the evidence of the trust must be clear and convincing." *Id.*

¶14    The estate argues that "Thelma's statements to [Angie and Jeannie] prior to her death unmistakably demonstrate both (1) intent to create a trust and (2) the confidential relationship" required to create an oral express trust. Sam, however, argues that Thelma's statements are hearsay and are therefore inadmissible to prove either element. The district court agreed that Thelma's statements "regarding the creation of an oral express trust are inadmissible . . . hearsay and they are not subject to any exception." Before reaching the merits of the estate's claims, we must therefore determine whether the district court correctly excluded Thelma's statements. We conclude that it did.

1.    Thelma's Statements Are Inadmissible.

¶15    To challenge the district court's exclusion of Thelma's discussions with Angie, Jeannie, and Dorothy, the estate relies

primarily on the dying declaration exception.[5] Rule 801(c) of the Utah Rules of Evidence provides that "hearsay" is an out-of-court "statement that . . . [is] offer[ed] in evidence to prove the truth of the matter asserted in the statement." Utah R. Evid. 801(c)(2). "Hearsay is not admissible" unless subject to an exemption or exception. *Id.* R. 802. One exception to the hearsay rule allows the admission of statements made under belief of impending death. *Id.* R. 804(b)(2). Specifically, rule 804(b)(2) provides that "a statement made by the declarant while believing the declarant's death to be imminent" is "not excluded by the rule against hearsay."[6] *Id.* R. 804(b)(2). That belief need not approach "absolute knowledge" of impending death but "must be more than a mere possibility or probability of death." *State v. St. Clair*, 282 P.2d 323, 325–26 (Utah 1955). The test is "whether the declarant at the time of the declaration so fully expected to die from an existing affliction that he [or she] had in fact abandoned all hope of recovery." *Id.* at 326. We review a district court's ruling on admissibility of evidence for abuse of discretion. *Eggett v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 10, 94 P.3d 193; *McKelvey v. Hamilton*, 2009 UT App 126, ¶¶ 16–18, 211 P.3d 390.

¶16    In arguing that Thelma's statements are admissible under the dying declaration exception, the estate relies on the fact that Thelma made these statements after she had been diagnosed with

---

5. The estate makes some cursory arguments addressing other exceptions to the hearsay rule and also asserts that Thelma's statements are not offered for their truth. The only exception that is sufficiently briefed, however, is the dying declaration exception. *See* Utah R. App. P. 24(a)(9) ("The argument [in an appellant's brief] shall contain the contentions and reasons of the appellant with respect to the issues presented . . . with citations to the authorities, statutes, and parts of the record relied on.").

6. The dying declaration exception only applies when the declarant is "unavailable as a witness," such as when the declarant "cannot be present or testify . . . because of death." Utah R. Evid. 804(b)(2), (a)(4).

cancer, some of them within a relatively short time before her death. Thelma was initially diagnosed with cancer in 1993, which went into remission but returned sometime in late 1999 or early 2000. Thelma died on August 26, 2001, and, according to the estate, Thelma made several of the relevant statements in July and August 2001, just weeks before her death. The estate thus argues that "[a]t the time [she] discussed the oral trust agreement with her daughters . . . , Thelma was in a state of imminent, impending death—and, in fact, she died very soon thereafter . . . from her long bout with cancer."

¶17    Sam, however, points out that during the summer of 2001, Thelma was undergoing chemotherapy and, in fact, had been receiving chemotherapy treatment on August 26, 2001, when she suffered an unexpected heart attack and passed away. He maintains that "Thelma could not have anticipated the heart attack, and if she had abandoned all hope of recovery from her cancer, then she would not have been undergoing chemotherapy treatment on the day she died." Sam thus argues that "there is . . . no evidence that Thelma had abandoned all hope of recovery from her cancer or thought her death was imminent." Indeed, some of Thelma's statements were requests that should something happen to *Sam* at a time when she, for some reason, was unable to act according to the purported verbal agreement, her daughters should do so for her. These statements do not indicate that Thelma was contemplating her imminent death but, instead, was considering the implications of Sam's death and her own incapacitation. Such facts defeat whatever inference might otherwise be drawn simply from the fact that some statements were made shortly before her death and during a period of time that she was battling cancer. Other statements were made even earlier, at a time less proximate to the date of her death, and her cancer diagnosis alone cannot satisfy the exception. Thus, because the evidence does not support a determination that Thelma "so fully expected to die from an existing affliction that [she] had in fact abandoned all hope of recovery," *St. Clair*, 282 P.2d at 326, we conclude that the district court acted within its discretion in ruling that Thelma's statements

are inadmissible hearsay and not subject to the dying declaration exception.

2.      There is No Confidential Relationship.

¶18     Because Thelma's statements are inadmissible, the estate is left to rely on Sam's statements, the parties' conduct, and the deeds to establish a question of material fact about the existence of an oral trust. On appeal, the estate argues that Sam's statements and the improvements Thelma made to Parcel 136 are sufficient to create such a fact question as to whether Yia Yia, Thelma, and Sam intended to create a trust. However, we need not decide whether that evidence would be sufficient to survive summary judgment, because without Thelma's statements, the estate has failed to provide sufficient evidence of the existence of a confidential relationship to take the claimed oral trust outside the constraints of the statute of frauds.

¶19     Because an oral express trust is typically not accompanied by a signed writing, a transfer of land that was made with the intent to create a trust will generally fail under the statute of frauds. *Rawlings v. Rawlings*, 2010 UT 52, ¶ 27, 240 P.3d 754. To avoid the effect of the statute of frauds, the estate must show the existence of one of the qualifying circumstances identified by section 45 of the Restatement (Second) of Trusts. *Id.* ¶ 28 (citing Restatement (Second) of Trusts § 45 (1959)). On appeal, the only such circumstance that the estate advances is the existence of a confidential relationship.[7] *Id.* ¶¶ 26–28 (explaining that "[w]here a transfer of land was made with the intent to create . . . a trust, the trust will generally fail unless evidenced by a writing that complies with the" statute of frauds, but the transfer may be exempt from the statute of frauds if "'the transferee at the time of the transfer was in a confidential relation to the transferor'" (quoting

---

7. The estate argued the applicability of all three of the exceptional circumstances referred to in section 45 of the Restatement (Second) of Trusts before the district court, but its argument on appeal is limited to the existence of a confidential relationship.

Restatement (Second) of Trusts § 45(1)(b) (1959))). So even assuming that Sam's statements are sufficient to create a question of fact about whether he, Thelma, and Yia Yia intended to hold Parcel 136 in trust, the estate would still have to prove the existence of a pertinent confidential relationship.

¶20 In granting summary judgment, the district court concluded that "[t]he familial relationship among Yia Yia, Thelma . . . , and Sam . . . , by itself, is insufficient to establish a confidential relationship at the times of the conveyances of Parcel 136" and that the estate "has not presented any additional competent evidence regarding a confidential relationship." On appeal, the estate argues that the district court erred in reaching that conclusion. In particular, the estate argues that "a confidential relation is (i) presumed as to [Sam's] mother; (ii) similarly presumed as to his nieces and nephews—Thelma's children—as beneficiaries of the oral trust; and (iii) at a bare minimum, a question of fact for the jury." We conclude that the estate has failed to demonstrate an issue of fact on this question; Sam's familial relationships are inadequate by themselves to show a confidential relationship, and the estate has not alleged enough additional facts to survive summary judgment.[8]

---

8. In its opening brief on appeal, the estate limited its argument to the relationships between Yia Yia and Sam and between Sam and the grandchildren. It made only a passing reference to a confidential relationship between Sam, Thelma, and Yia Yia in a section addressing another issue without any legal analysis. Then, in its reply brief, the estate expanded its argument to include the relationships between Sam and Thelma and among Sam, Thelma, and Yia Yia.

We limit our analysis to the relationships identified in the estate's opening brief: those between Sam and the grandchildren and between Sam and Yia Yia. *See Allen v. Friel,* 2008 UT 56, ¶ 8, 194 P.3d 903 ("[A]n appellant's reply brief shall be limited to answering any new matter set forth in the opposing brief," and "issues raised by an appellant in the reply brief that were not presented in the

(continued...)

¶21 The estate's contention that the trustee–beneficiary relationship between Sam and the grandchildren creates a confidential relationship fails for two reasons. First, the estate's attempt to prove a confidential relationship through a trustee–beneficiary relationship necessarily begs the very question this court is charged with resolving—whether Sam held Parcel 136 pursuant to an oral trust in favor of the grandchildren in the first place. This is because in order to establish the existence of a trust in the face of the statute of frauds, the estate must first satisfy the requirements of an enforceable oral express trust, one of which is the existence of a confidential relationship. But the confidential relationship between trustee and beneficiaries does not arise absent an enforceable trust. So by relying on the trustee–beneficiary relationship between Sam and the grandchildren to establish a confidential relationship, the estate essentially presumes the

---

8. (...continued)
opening brief are considered waived and will not be considered by the appellate court." (citation and internal quotation marks omitted)); Utah R. App. P. 24(c).

In any event, we note that the estate does not point to any facts that might indicate that a confidential relationship existed between Thelma and Sam at the time of the 1996 conveyance. Generally, a "confidential relationship arises when a party, after having gained the trust and confidence of another, exercises extraordinary influence over the other party." *In re Estate of Ioupe*, 878 P.2d 1168, 1174 (Utah Ct. App. 1994) (citation and internal quotation marks omitted). According to the estate, Thelma's cancer returned in "the late 1990s or early 2000," and she was in good enough health to take out a $35,000 loan to build a large barn on Parcel 136 as late as 1999. The estate also makes clear that "Sam never participated or assisted financially in the costs or expenses associated with the farming operations on Parcel 136." These facts do not seem to support an inference that Sam occupied a "'position of superiority'" over Thelma in 1996, *see Webster v. Lehmer*, 742 P.2d 1203, 1206 (Utah 1987) (quoting *Bradbury v. Rasmussen*, 401 P.2d 710, 713 (Utah 1965)). And, as we discuss *infra* ¶¶ 23–24, the familial relationship alone is insufficient.

existence of the same trust that the confidential relationship is necessary to establish. Thus, the requisite confidential relationship cannot be based on a trustee–beneficiary relationship between Sam and the grandchildren. If it were otherwise, every oral trust would be excepted from the statute of frauds because of the resulting confidential relationship of trustee and beneficiary, and the other factors addressed by section 45 of the Restatement (Second) of Trusts would be superfluous.

¶22    Second, the grandchildren were neither the transferee nor the transferor in any of the relevant transactions. To exempt the creation of an oral trust in real property from the statute of frauds, a confidential relationship must have existed between the transferee and transferor at the time of the transfer. *See Rawlings*, 2010 UT 52, ¶ 28 (noting that a constructive trust can be created if an owner "transfers land . . . to another in trust for a third person" and "'the transferee at the time of the transfer was in a confidential relation to the transferor'" (quoting Restatement (Second) of Trusts § 45(1)(b) (1959))). Each time Parcel 136 was conveyed—in 1996, 1999, and 2002—the transfers were exclusively among or between Yia Yia, Sam, and Thelma. The grandchildren were never transferees or transferors with respect to any of these conveyances. Therefore, any confidential relationship Sam may or may not have had with the grandchildren at the time of these transfers is irrelevant.

¶23    In support of its claim of a confidential relationship between Yia Yia and Sam, the estate relies on the proposition that "'[a] confidential relationship is presumed between parent and child.'" (Emphasis omitted) (quoting *Baker v. Pattee*, 684 P.2d 632, 636 (Utah 1984)). According to the estate, this presumption is sufficient to create a genuine issue of material fact as to the existence of the requisite confidential relationship.

¶24    "However, the mere relationship of parent and child does not constitute evidence of such confidential relationship." *In re Estate of Jones*, 759 P.2d 345, 347–48 (Utah Ct. App. 1988) (explaining that the statement in *Baker* that a confidential relationship is presumed to exist between a parent and child was

"unsupported *obiter dictum*"), *rev'd on other grounds*, 858 P.2d 983 (Utah 1993). Rather, a "confidential relationship arises when a party, after having gained the trust and confidence of another, exercises extraordinary influence over the other party." *In re Estate of Ioupe*, 878 P.2d 1168, 1174 (Utah Ct. App. 1994) (citation and internal quotation marks omitted). "[A] few relationships, such as that of attorney and client, are presumed to be confidential, [but] '[i]n all other relationships the existence of a confidential relationship is a question of fact.'" *Id.* (third alteration in original) (quoting *In re Estate of Jones*, 759 P.2d at 347).

> "[Although] kinship may be a factor in determining the existence of a legally significant confidential relationship, there must be a showing, in addition to the kinship, [of] a reposal of confidence by one party and the resulting superiority and influence on the other party . . . . Mere confidence in one person by another is not sufficient alone to constitute such a relationship."

*Id.* (alteration and omission in original) (quoting *In re Estate of Jones*, 759 P.2d at 347–48). Accordingly, the district court correctly concluded that "[t]he familial relationship . . . , by itself, is insufficient to establish a confidential relationship."

¶25    Thus, the burden still rests on the estate to prove the presence of the confidential relationship that it claims existed between Sam and Yia Yia—or more precisely, to demonstrate a genuine issue of material fact regarding whether such a relationship existed between Sam and Yia Yia at the time of a pertinent conveyance.

¶26    The estate has failed to carry its burden. As we have discussed, in order to exempt an oral trust from the statute of frauds, a confidential relationship must exist between the transferor and transferee "at the time of the transfer." *See Rawlings v. Rawlings*, 2010 UT 52, ¶ 28, 240 P.3d 754. The estate identifies three transfers in its brief that it believes are relevant to the imposition of a constructive trust—Yia Yia's 1996 conveyance to

herself, Sam, and Thelma as joint tenants; Thelma's 1999 transfer to herself, Yia Yia, and Sam; and Yia Yia's 2002 conveyance to Sam. Although the estate's brief is not entirely clear on this point, it appears to rely exclusively on the 1996 transfer, arguing that "the 1996 deed from Yia Yia to herself, Thelma and Sam, to protect Parcel 136 . . . is unmistakably consistent with . . . *intent to create a trust relationship* regarding Parcel 136." (Emphasis added.) By contrast, the estate cites Thelma's 1999 conveyance as "consistent with a 'confidential' or fiduciary duty as one of the three Constructive Trustees under the oral trust." It also references the 2002 conveyance as "confirm[ing] the Constructive Trustees' intent to protect [Parcel 136]." Indeed, in its complaint, its response to Sam's motion for summary judgment, and its arguments on appeal, the estate has consistently asserted that a constructive trust was created to hold Parcel 136 for the benefit of the grandchildren by the original conveyance in 1996 and that events subsequent to that conveyance evince the intent to create such a trust. And at oral argument before the district court, the estate identified the "initial transfer" in 1996 as being the transfer that was intended to create a trust.[9] Thus, to avoid summary judgment, the estate must show an issue of fact regarding whether a confidential relationship existed between Sam and Yia Yia at the time of the 1996 transfer.

¶27 The estate, however, relies on evidence that is either inadmissible hearsay or unrelated to the 1996 conveyance. For instance, it argues that "Thelma's statements to Angie and Jeannie prior to her death unmistakably demonstrate . . . the confidential relationship between Yia Yia, Thelma, and Sam," but we have already concluded that none of Thelma's statements are admissible. The estate also argues that Sam and Yia Yia had a confidential relationship because after Thelma's death in 2001, Yia Yia "spent most of her time in bed and relied on others to care for her";

---

9. This approach is also more consistent with the estate's argument below that a confidential relationship existed among Sam, Yia Yia, and Thelma. As we have explained, however, the estate has not argued the existence of such a confidential relationship on appeal. *See supra* ¶ 20 n.8.

"mainly spoke and read in Greek, and lacked the ability to read or speak the English language with . . . any proficiency"; and "entrusted Sam with the control of her money, relying on him to deposit her social security checks and pay her bills." Although these facts might demonstrate a relationship of trust and confidence after 2001, they do not imply that Sam "exercise[d] extraordinary influence" over Yia Yia in 1996. *See In re Estate of Ioupe*, 878 P.2d at 1174 (citation and internal quotation marks omitted). The estate's brief is otherwise silent regarding the existence of a confidential relationship at the time of the 1996 conveyance. As a result, the district court correctly concluded that the estate "has not presented any . . . competent evidence regarding a confidential relationship," and the oral express trust claim therefore cannot survive summary judgment.

¶28    In sum, we conclude that the district court correctly determined that the estate failed to demonstrate an issue of material fact as to the creation of a constructive trust under a theory of oral express trust. To prove a confidential relationship, the estate could not rely on Thelma's statements because they are inadmissible hearsay. We need not address the issue of whether Sam's statements raise material questions about the intent to create a trust because the estate has not convinced us that there are genuine issues of material fact as to the existence of a confidential relationship at the time of the 1996 transfer of Parcel 136—the transfer that is most legally significant to its theory concerning the imposition of a constructive trust. Because under Restatement (Second) of Trusts section 45, a confidential relationship is essential to clear the bar that the statute of frauds poses to the enforceability of an oral express trust, the district court did not err in granting summary judgment to Sam on the estate's theory of oral express trust.

B.    Sam Was Not Unjustly Enriched.

¶29    The estate also argues that the district court erred in granting summary judgment on its unjust enrichment claim because there are issues of material fact regarding whether Sam was unjustly enriched when Thelma's family constructed a number

of improvements on the property sometime between 1999 and 2001.[10] In particular, the estate argues that without any participation or financial assistance from Sam, Thelma and her family (1) operated a farm on Parcel 136 as part of an operation that also included the adjacent parcel; (2) obtained a loan and constructed a large barn on Parcel 136 in 1999; and (3) "built ditches, piped the property, planted seeds, harvested crops, and paid the property taxes until Thelma's death" on August 26, 2001. The estate also references several statements Sam made between late 2001 and 2005 that it claims acknowledge the estate's interest in "one-half of Parcel 136." "These facts," the estate argues, "compel imposition of an equitable constructive trust." We affirm the district court's summary judgment ruling on the issue.

¶30    "As with claims based on an oral express trust, claims of unjust enrichment can support the imposition of a constructive trust." *Rawlings v. Rawlings*, 2010 UT 52, ¶ 29, 240 P.3d 754. In particular, "'a constructive trust may arise where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.'" *Id.* (quoting *Parks v. Zions First Nat'l Bank*, 673 P.2d 590, 599 (Utah 1983)). An unjust enrichment claim has three elements: "(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Id.* (citation and internal quotation marks omitted).

¶31    The estate's unjust enrichment claim cannot survive summary judgment because it has not demonstrated an issue of material fact regarding the third element, inequitable circumstances. In discussing what constitutes inequitable circumstances in the context of an unjust enrichment claim, Utah

---

10. The estate's brief does not indicate whether Thelma built the improvements before or after she conveyed Parcel 136 to herself, Yia Yia, and Sam as joint tenants. *See supra* ¶ 5 n.4.

courts have recognized that "an owner cannot retain a benefit which knowingly he has permitted another to confer upon him by mistake." *Id.* ¶ 49 (citation and internal quotation marks omitted); *accord Jeffs v. Stubbs*, 970 P.2d 1234, 1247 (Utah 1998). By contrast, one who receives "[m]oney or benefits that have been officiously or gratuitously furnished" has no obligation to disgorge them. *Hess v. Johnston*, 2007 UT App 213, ¶ 21, 163 P.3d 747 (citation and internal quotation marks omitted).

¶32    Accordingly, in *Rawlings* the Utah Supreme Court affirmed the imposition of a constructive trust where a farm owner solicited funds and real property from his siblings through false representations that he used the farm to support their mother. 2010 UT 52, ¶¶ 42–43. Similarly, in *Jeffs*, the plaintiffs deeded their property to a trust and constructed improvements "in reliance upon the [trust's] representations that [the plaintiffs] could live on the land for the rest of their lives." 970 P.2d at 1247–48. The trust later declared that each plaintiff was a tenant at will and filed unlawful detainer and quiet title actions against them. *Id.* at 1240. The court held that under those circumstances, the trust was unjustly enriched and could not retain the value of the improvements. *Id.* at 1248.

¶33    Here, even if the estate could demonstrate an issue of material fact regarding the first two elements of unjust enrichment, the facts it identifies to show inequitable circumstances are legally insufficient. First, although Thelma's discussions with Angie and Jeannie in 1999 about the oral trust might imply that Sam intentionally benefitted from the estate's mistaken belief that an oral trust existed, we have already held that these statements are inadmissible hearsay. *See supra* ¶¶ 15–17. Second, Sam's statements after Thelma's death in 2001 might create a disputed issue of fact as to whether Sam entered into an oral agreement with Thelma or exploited her children's belief that such an agreement existed. But the estate has provided no evidence that any of these statements predated the estate's efforts to improve Parcel 136. According to the estate, Thelma obtained financing to construct the barn in about 1999, and her family built the other improvements during the same general time frame before Thelma's death. The earliest admissible

statement that the estate identifies to show Sam allowed the estate to "confer [a benefit] upon him by mistake," *see Rawlings*, 2010 UT 52, ¶ 49 (citation and internal quotation marks omitted), occurred "[f]ollowing Thelma's death" in "two discussions with Sam [and Jeannie]" after the improvements were already built. Thus, unlike the plaintiffs in either *Jeffs* or *Rawlings*, who improved or transferred property in reliance on misleading statements and omissions, the estate cannot argue that Sam's statements encouraged Thelma and her children to build improvements on Parcel 136 under a mistaken belief that an oral trust existed, because the only statements on which the estate relies occurred after the improvements were made.

¶34     Nor can the estate show that Thelma built the improvements with any "expectation of a return benefit, compensation, or consideration." *See Hess*, 2007 UT App 213, ¶ 21 (citation and internal quotation marks omitted). Utah courts have rejected unjust enrichment claims where benefits are "officiously or gratuitously furnished" with no expectation of compensation. *Jeffs*, 970 P.2d at 1248 (citation and internal quotation marks omitted); *Hess*, 2007 UT App 213, ¶ 21. All of the improvements that the estate identifies were constructed during Thelma's joint tenancy with Yia Yia and Sam. As a joint tenant of Parcel 136, Thelma held "a concurrent ownership . . . with a right of survivorship, i.e., . . . the eventuality of a full ownership interest, conditioned upon the tenancy remaining unsevered, and [Thelma] out-living the other" joint tenants. *See Shiba v. Shiba*, 2008 UT 33, ¶ 17, 186 P.3d 329 (emphasis, citation, and internal quotation marks omitted). Under Utah law, one joint tenant generally has no obligation to compensate the other for ordinary repairs or improvements to the property, *see* David A. Thomas & James H. Backman, *Utah Real Property Law* § 2.03(a)(3)(iii) (LexisNexis 2010), and the estate has not alleged any admissible facts that show Sam's conduct led Thelma to expect otherwise, *see Hess*, 2007 UT App 213, ¶ 21. As a result, Thelma appears to have constructed the improvements under circumstances that do not support an inference that she expected any compensation from Sam for her efforts.

¶35    The estate therefore fails to create an issue of material fact regarding whether it would be inequitable for Sam to retain any benefit Thelma may have conferred on him. Accordingly, we are not persuaded that the district court erred in concluding that the estate failed to demonstrate the existence of a genuine issue of material fact as to whether Sam has been unjustly enriched by the transfer of Parcel 136.

CONCLUSION

¶36    We conclude that the district court correctly granted Sam's motion for summary judgment. The estate could not rely on Thelma's hearsay statements to establish an oral express trust, and the estate's other evidence failed to show genuine issues of material fact as to the existence of a confidential relationship between the parties. The oral express trust claim therefore cannot survive summary judgment. The estate also failed to demonstrate a dispute of material fact regarding whether it would be inequitable for Sam to retain benefits Thelma's family may or may not have conferred on him. We therefore affirm the district court's ruling in its entirety.

––––––––––